UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | HON. ALISON J. NATHAN U.S.D.J. |
| v. | Criminal No. 15-CR-769 (AJN) |
| TREVON GROSS, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TREVON GROSS'S MOTION TO DISMISS AND DEMANDS FOR A BILL OF PARTICULARS

KROVATIN KLINGEMAN LLC
60 Park Place, Suite 1100
Newark, New Jersey 07102
(973) 424-9777
Attorneys for Defendant
Trevon Gross

On the Brief:

HENRY E. KLINGEMAN, ESQ.
KRISTEN M. SANTILLO, ESQ.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ...................................................................................................... 2

LEGAL ARGUMENT ............................................................................................................... 6

    **I.**       THE INDICTMENT MUST BE DISMISSED FOR FAILURE TO STATE AN
            OFFENSE ........................................................................................................... 6

    **II.**      A BILL OF PARTICULARS IS NECESSARY ....................................................... 14

CONCLUSION .......................................................................................................................... 17

i

## TABLE OF AUTHORITIES

Cases

*Russell v. United States,*

    369 U.S. 749, (1962) ................................................................................ 7, 8, 16

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,*

    327 F.3d 173 (2d Cir. 2003) ........................................................................ 8

*U.S. ex rel. Sollazzo v. Esperdy,*

    285 F.2d 341 (2d Cir. 1961) ........................................................................ 12

*United States v. Abrams,*

    539 F.Supp. 378 (S.D.N.Y.1982) ................................................................ 7

*United States v. Bortnovsky,*

    820 F.2d 572 (2d Cir. 1987) ........................................................................ 15

*United States v. Foley,*

    73 F.3d 484 (2d Cir. 1996) .......................................................................... 7

*United States v. Ford,*

    435 F.3d 204 (2d Cir. 2006) ........................................................................ 11

*United States v. Goldberg,*

    756 F.2d 949 (2d Cir. 1985) ........................................................................ 2

*United States v. Jordan,*

    560 F. App'x 945 (11th Cir. 2014) .............................................................. 8

*United States v. Louissaint,*

    2016 WL 47476 (W.D.N.Y. Jan. 4, 2016) .................................................. 16

*United States v. McElroy,*

    910 F.2d 1016 (2d Cir. 1990) ...................................................................... 1, 8, 15

*United States v. Pirro,*

    212 F.3d 86 (2d Cir. 2000) .......................................................................... 7, 9, 13, 14

*United States v. Ramming,*
915 F. Supp. 854 (S.D. Tex. 1996) ........................................................................ 12

*United States v. Rooney,*
37 F.3d 847 (2d Cir. 1994).......................................................................... 9, 12, 13

*United States v. Rosenblatt,*
554 F.2d 36 (2d Cir.1977)....................................................................................... 8

*United States v. Santana,*
2015 WL 5781413 (S.D.N.Y. Oct. 1, 2015) ......................................................... 15

*United States v. Scully,*
108 F. Supp. 3d 59 (E.D.N.Y. 2015) ..................................................................... 16

*United States v. Stringer,*
730 F.3d 120 (2d Cir. 2013).................................................................................... 7

*United States v. Szur,*
1998 WL 132942 (S.D.N.Y.1998)…………………………………………… 16

*United States v. Thompson,*
2015 WL 6549590 (E.D.N.Y. Oct. 28, 2015) ...................................................... 8, 9

*United States v. Walsh,*
194 F.3d 37 (2d Cir. 1999).................................................................................... 7

*United States v. Walsh,*
2016 WL 211916 (E.D.N.Y. Jan. 15, 2016) .......................................................... 9

*United States v. Wilson,*
2001 WL 798018 (S.D.N.Y.2001) ....................................................................... 16

Statutes

18 U.S.C. § 215.............................................................................................Passim

18 U.S.C. § 666............................................................................................ 9, 10, 12

Rules

F.R.C.P 7(c)(1) ............................................................................................................ 6

F.R.C.P. 7(f) ............................................................................................................... 14

Other Authorities

1 Fed. Prac. & Proc.Crim. § 124 (4th ed.2014) ............................................................ 9

H.R. REP. 99-335, 1986 U.S.C.C.A.N. 1782 ................................................. 9, 10, 13

## PRELIMINARY STATEMENT

In 2014, Trevon Gross was the Chairman of the Board of the Helping Other People Excel Federal Credit Union ("HOPE FCU"), a New Jersey-based credit union serving primarily low-income members.  In April 2014, Mr. Gross entered into an agreement on behalf of HOPE FCU with "Collectables Club," a company that held itself out to financial institutions as a members-only association of collectables and memorabilia enthusiasts.  In connection with this agreement, Mr. Gross has been charged with receiving corrupt payments with the intent to be influenced as an officer of a financial institution in violation of 18 U.S.C. § 215(a)(2).

In a nine count indictment, Mr. Gross is charged with only one count.  The remaining counts charge defendants Anthony Murgio, Michael Murgio and Yuri Lebedev with operating an unlawful Bitcoin exchange business by deceptive means through phony companies, including the Collectables Club.  It is alleged that Anthony Murgio, Michael Murgio and Lebedev entered into a conspiracy to make corrupt payments to Mr. Gross in order to take over the HOPE FCU credit union to facilitate the operation of the unlawful Bitcoin exchange scheme.  However, Mr. Gross is not alleged to be a part of this conspiracy.  Indeed, there are no allegations that Mr. Gross had any knowledge of the unlawful Bitcoin exchange scheme, or any intention to further its unlawful purpose or any other unlawful purpose.

In order to state an offense under 18 U.S.C. § 215(a)(2), a defendant must "corruptly" solicit or accept a thing of value with an intent to be influenced.  The Second Circuit has defined the term "corruptly" as:  "act[s] done voluntarily and intentionally and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means."  *United States v. McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990).  Since there are insufficient allegations to establish that Mr. Gross had an intent to accomplish an "unlawful

end or result" or a "lawful end or result by some unlawful method or means," the Indictment fails to allege the essential elements of the offense and it must be dismissed.

A bill of particulars cannot save a deficient indictment where, as here, there is no indication on the face of the Indictment that the grand jury properly understood the elements of the offense and the evidence necessary to support them. However, if the Court deems the Indictment to be sufficient to survive a motion to dismiss, Mr. Gross requests a bill of particulars identifying what unlawful end or lawful end through unlawful means he is alleged to have intended to achieve. In order to prepare a defense to the charge, Mr. Gross is entitled to know what it is alleged makes his conduct "corrupt," and thus criminal.

Mr. Gross also seeks a bill of particulars as to the basis for the government's contention that venue for the charged offense lies in the Southern District of New York. At all relevant times, Mr. Gross was a resident of New Jersey, and served as the Chairman of the Board of a New Jersey-based credit union. There is no indication from the Indictment or the discovery produced to date that there is any connection between Mr. Gross's alleged crime and the Southern District of New York. Mr. Gross is entitled to a bill of particulars to prepare a defense based on venue.

## FACTUAL BACKGROUND AND PROCEDRUAL HISTORY[1]

### 1. The Bribery Allegations

According to the Third Superseding Indictment, defendant Anthony Murgio, with the assistance of Yuri Lebedev, operated an unlawful Bitcoin exchange scheme. Indictment ¶¶ 3, 5.

---

[1] While Mr. Gross does not concede the accuracy of the facts as alleged in the Indictment, on a motion to dismiss, the allegations in the Indictment are accepted as true. *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).

They operated through phony companies, including the "Collectables Club," a Florida based

company.  *Id.* ¶ 3.  The government alleges that Anthony Murgio, Lebedev and their co-

conspirators deceived the financial institutions with which they did business in a variety of ways.

They operated phony websites.  *Id.* ¶ 5.  They "sought to trick the financial institutions through

which Coin.mx operated and processed transactions into believing their unlawful Bitcoin

exchange business was simply a members-only association of individuals who discussed, bought,

and sold collectable items, such as stamps and sports memorabilia."  *Id.*  They also opened bank

accounts at U.S. financial institutions and "knowingly and falsely represented" that they were

opened to operate a members-only association of collectables and memorabilia enthusiasts, when

in fact they were operating an unlawful Bitcoin exchange business, "deceived banks and credit

card issuers into authorizing credit and debit card payment and [ACH] transaction to purchase

Bitcoins through Coin.mx," and "knowingly instructed customers of Coin.mx to lie to credit card

issuing banks about [their] Bitcoin transactions…."  *Id.* ¶¶ 6-8.

Defendants Anthony Murgio, Michael Murgio and Yuri Lebedev have also been charged

with a conspiracy to make corrupt payments to Trevon Gross, who in 2014 was the Chairman of

the Board of Directors of the Helping Other People Excel Federal Credit Union ("HOPE FCU"),

a credit union serving primarily low-income members.  *Id.* ¶ 2.  Specifically, it is alleged that:

> In approximately 2014, in an effort to evade scrutiny from financial institutions and
> others about the nature of Coin.mx, and to facilitate the operation of the unlawful Bitcoin
> exchange, ANTHONY R. MURGIO, MICHAEL J. MURGIO and YURI LEBEDEV, the
> defendants, and their co-conspirators acquired control of HOPE FCU, a federal credit
> union in New Jersey with primarily low-income members.  TREVON GROSS, the
> defendant, who was the Chairman of the Board of HOPE FCU, allowed and assisted
> ANTHONY R. MURGIO, MICHAEL J. MURGIO, LEBEDEV, and their co-
> conspirators to take control of HOPE FCU in exchange for bribes, which GROSS
> directed ANTHONY R. MURGIO and MICHAEL J. MURGIO to pay to bank accounts
> under GROSS's control.  In furtherance of this bribery scheme, LEBEDEV offered to
> pay $41,000 of his own money in bribes to GROSS.  In total, ANTHONY R. MURGIO
> and his co-conspirators, at GROSS's direction, paid over $150,000 in bribes to bank

accounts under GROSS's control.  GROSS, in turn, spent proceeds from the bribes on personal expenses, including payments on his personal credit cards.  Thereafter, and with GROSS's assistance, ANTHONY R. MURGIO installed his co-conspirators, including LEBEDEV, on the Board of HOPE FCU and transferred Coin.mx's banking operations to HOPE FCU.  ANTHONY R. MURGIO, LEBEDEV, and their co-conspirators operated HOPE FCU as a captive bank for their unlawful Bitcoin exchange until at least late 2014.

*Id.* ¶ 10.

As overt acts in furtherance of the conspiracy to make corrupt payments to Mr. Gross, it is alleged that Anthony Murgio and Michael Murgio communicated with Mr. Gross "in an effort to take over control of the Board of HOPE FCU in furtherance of Coin.mx's operations." *Id.* ¶ 19(a).  It is further alleged that Michael Murgio "executed an agreement on behalf of 'Collectables Club' with TREVON GROSS, the defendant, on behalf of HOPE FCU, stating, among other things, that individuals chosen by 'Collectables Club' would be nominated for positions on the Board of HOPE FCU." *Id.* ¶ 19(b).

While Anthony Murgio, Michael Murgio and Lebedev are alleged to have conspired to make corrupt payments to Mr. Gross, Mr. Gross is not charged in any conspiracy.  He is charged with one count of receiving a corrupt payment as an officer of a financial institution with the intent to be influenced in violation of 18 U.S.C. § 215(a)(2).  Specifically, it is alleged that:

> From at least in or about May 2014 through at least in or about 2015, in the Southern District of New York and elsewhere, TREVON GROSS, the defendant, as an officer, director, employee, agent and attorney of a financial institution, did corruptly solicit and demand for the benefit of a person, and corruptly agreed to accept, a thing of value from a person, to wit, a sum of money greater than $1,000, with the intent to be influenced in connection with a business and transaction of such institution, to wit, HOPE FCU.

*Id.* ¶ 23.

Nowhere is it alleged that Gross had any knowledge that Anthony Murgio, Michael Murgio or Lebedev were operating an unlawful Bitcoin exchange scheme.  There are also no allegations that Gross knew that the Collectables Club was a phony company, or otherwise believed that it was anything other than the members-only association of collectables and

memorabilia enthusiasts that Anthony Murgio and his co-conspirators led other financial institutions to believe it was.  While it is alleged that Gross entered into an agreement with the Collectables Club, which provided, among "other things" that are unspecified, that individuals chosen by the Collectables Club would be nominated for positions on the Board of HOPE FCU, *see Id.* ¶ 19(b), there are no allegations that the nomination of these individuals for Board positions was against any law, regulation or credit union policy or procedure, much less that Gross had any knowledge that the nominations would violate any laws, regulations, policies or procedures or would otherwise harm the credit union in any way.  There are also no allegations that the elections process for the Board members was compromised by Mr. Gross in any way.

While it is alleged that Gross directed Anthony Murgio and Michael Murgio to make payments to "bank accounts under GROSS's control," these accounts are not specified, nor is the manner or means by which Gross exercised control over the accounts.  It is further alleged that Gross spent proceeds from the "bribes" on personal expenses, including payments on his personal credit cards, but when and how these payments were made, and what proportion of the payments he made to personal credit cards is not specified.

## 2.  The Venue Allegations

While there are several allegations in the Indictment claiming a nexus between Anthony Murgio and his co-conspirators and the Southern District of New York, Mr. Gross is not alleged to be a part of their conspiracy, and there are no specific allegations in the Indictment that Mr. Gross committed any part of the one alleged crime with which he is charged in the Southern District of New York.  To the contrary, it is alleged that at all times relevant to the Indictment, Mr. Gross was a "resident of New Jersey," and HOPE FCU of which he was a Board member was a "New Jersey-based credit union with primarily low-income members."  *Id.* ¶ 2.  While it is

5

alleged that "[o]n or about May 9, 2014, ANTHONY R. MURGIO caused $15,000 to be

transferred via wire through the Southern District of New York to a particular bank account

("Bank Account-1") at the request of Gross," *Id.* ¶ 19 (c), there are no allegations that Gross

intended to route the wire through the Southern District of New York, or even knew that the wire

passed through New York.  In Count Five, it is only generally alleged that the crime was

committed "in the Southern District of New York and elsewhere."  *Id.* ¶ 23.

### 3.  Requests for a Bill of Particulars

On June 9, 2016, Mr. Gross requested a bill of particulars, asking the government to:

> Please identify the unlawful end that Mr. Gross is alleged to have intended to achieve,
> and/or the lawful end he is alleged to have intended to achieve through unlawful means.
> If he is alleged to have intended to achieve a lawful end through unlawful means, please
> identify those unlawful means.

*See* Exhibit A to Affirmation of Kristen Santillo dated June 17, 2016.  On May 25, 2016, he also

asked the government to "identify any and all acts alleged to have been committed by Trevon

Gross in the Southern District of New York."  *Id.* at Ex. B.  The government denied these

requests, claiming that the Indictment was "sufficiently detailed and specific on its face,

particularly as supplemented by the discovery materials that have been produced."  *Id.* at Ex. C.

## LEGAL ARGUMENT

## POINT I

### THE INDICTMENT MUST BE DISMISSED FOR FAILURE TO STATE AN OFFENSE

Pursuant to Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain,

concise, and definite written statement of the essential facts constituting the offense charged."

"This requirement performs three constitutionally required functions:  It fulfills the Sixth

6

Amendment right 'to be informed of the nature and cause of the accusation;' it prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and it serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999).  The Indictment Clause of the Fifth Amendment "requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Id. (citing United States v. Abrams,* 539 F.Supp. 378, 384 (S.D.N.Y.1982)).  The Indictment against Mr. Gross must be dismissed because it fails to allege the essential elements of 18 U.S.C. § 215, and it offers no assurances that Mr. Gross will be tried based upon evidence presented to the grand jury.

Generally, "an indictment need 'do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (*quoting United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).  However, "[i]n an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Russell v. United States*, 369 U.S. 749, 765, (1962) (quotation omitted).  When "one element of the offense is implicit in the statute, rather than explicit, and the indictment tracks the language of the statute and fails to allege the implicit element explicitly, the indictment fails to allege an offense." *United States v. Foley*, 73 F.3d 484, 488 (2d Cir. 1996).  Additionally, "'where the definition of an offense ... includes generic terms,' such as fraud, 'it is not sufficient that the indictment shall charge the offense in the same generic terms as in the definition; but it must state the species, it must descend to particulars.'"

7

particulars." *See United States v. Thompson*, No. 15–CR–80 (S–2)(ILG), 2015 WL 6549590, * 4

(E.D.N.Y. Oct. 28, 2015) (*citing United States v. Rosenblatt,* 554 F.2d 36, 41 (2d Cir.1977)).

   The bank bribery statute under which Mr. Gross has been charged, 18 U.S.C. § 215(a)(2),

requires that a defendant act "corruptly."   In Mr. Gross's case, the meaning of the term

"corruptly" is sufficiently uncertain and ambiguous that it is not enough to merely track the

language of the statute in the Indictment.   The Indictment must "descend to particulars".   18

U.S.C. § 215(a)(2) penalizes:

> Whoever….as an officer, director, employee, agent, or attorney of a financial institution,
> corruptly solicits or demands for the benefit of any person, or corruptly accepts or agrees
> to accept, anything of value from any person, intending to be influenced or rewarded in
> connection with any business or transaction of such institution.

18 U.S.C. § 215(a)(2) (emphasis added).   As the Second Circuit has recognized, the term

"corruptly" does not "fully, directly, and expressly, without any uncertainty or ambiguity" set

forth all the elements necessary to constitute the offense.   *Russell*, 369 U.S. at 765.   In *Stichting*

*Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l*

*B.V. v. Schreiber*, 327 F.3d 173, 181 (2d Cir. 2003), the Second Circuit considered the meaning

of the term corruptly under the Foreign Corrupt Practices Act, and concluded that "[i]t is difficult

to determine the meaning of the word 'corruptly' simply by reading it in context.   We [must]

therefore look outside the text of the statute to determine its intended meaning."

   The Second Circuit has defined the term "corruptly" within the meaning of 18 U.S.C. §

215 as: "'act[s] done voluntarily and intentionally and with the bad purpose of accomplishing

either an unlawful end or result, or a lawful end or result by some unlawful method or means.

The motive to act corruptly is ordinarily a hope or expectation of either financial gain or other

benefit to oneself or some profit or benefit to another.'"   *McElroy*, 910 F.2d at 1021.   (emphasis

added).   *See also United States v. Jordan*, 560 F. App'x 945, 948 (11th Cir. 2014) (to act

corruptly under 18 U.S.C. § 215 means that the defendant "voluntarily and deliberately engaged in unlawful conduct.")  When an unlawful purpose is an element of the statute, the alleged unlawful conduct must be identified.  *See Thompson*, 2015 WL 6549590, * 4, (Oct. 28, 2015 E.D.N.Y.) ("courts generally hold that '[i]f a statute makes it a crime to engage in certain conduct 'contrary to law,' it is not enough simply to cite that statute and recite in the pleading that the act was contrary to law—the pleading must show what other law was violated, either by citation to the other statute or by sufficient factual allegations.'" (*quoting* Charles Alan Wright, et. al., 1 Fed. Prac. & Proc.Crim. § 124 (4th ed.2014)); *Pirro*, 212 F.3d at 93 ("[W]here an indictment charges a crime that depends in turn on violation of another statute, the indictment must identify the underlying offense.")

Factual specificity with respect to how the corrupt intent element is met is particularly critical under 18 US.C. § 215(a) because Congress amended the statue in 1986, adding the corrupt intent element and an exemption from the statute for "bona fide" payments made in connection with bank business,[2] for the express purpose of more "precisely defin[ing] the prohibited conduct" and ensuring that the statute would not reach "otherwise legitimate conduct."  H.R. REP. 99-335, 1, 1986 U.S.C.C.A.N. 1782, 1782.  *See also id*. at 1784 (noting that without the requirement of a corrupt or bad purpose, the statue would reach "all kinds of otherwise legitimate and acceptable conduct."); *United States v. Walsh*, No. 15-CR-91 (ADS), 2016 WL 211916, at *12 (E.D.N.Y. Jan. 15, 2016) ("the legislative history of the 1986 amendment to Section 215 indicates that Congress broadened the [bona fide payments] exemption to make clear that the statute did not proscribe legitimate business practices."); *United States v. Rooney*, 37 F.3d 847, 852 (2d Cir. 1994) (analyzing the 1986 amendments to 18 U.S.C.

---

[2] 18 U.S.C. § 215(c) exempts from the ambit of the bribery statute:  " bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business."

§ 666, which parallels the 1986 amendments to 18 U.S.C. § 215, and concluding that the clear purpose of the amendments was "to avoid § 666's possible application to acceptable commercial and business practices.").

The amendments were also intended to minimize prosecutorial discretion in deciding what conduct rises to the level of criminality.  In the House report accompanying the 1986 amendments, Congress expressly rejected the Justice Department's position that the banking industry should trust its judgment as to what conduct was criminal under a more broadly worded version of the statute, explaining:  "the Justice Department approach of relying upon the discretion of federal prosecutors leaves open the possibility of vindictive prosecution and does nothing to prevent innocent people who are not engaged in culpable or wrongful conduct from being stigmatized as criminals."  *See* H.R. REP. 99-335, 5, 1986 U.S.C.C.A.N. 1782, 1786. Consistent with the intent of Congress to minimize prosecutorial instruction, the Indictment must allege sufficient facts to demonstrate that a grand jury properly considered whether Mr. Gross's conduct rose to the level of criminality.

In Mr. Gross's case, there are no allegations that he engaged in any voluntary or intentional conduct "with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means," and the Indictment therefore fails to allege all essential elements of the offense.  While there is an allegation that Anthony Murgio, Michael Murgio and Yuri Lebedev attempted to acquire control of HOPE FCU to facilitate the operation of an unlawful Bitcoin exchange, there are no allegations that Mr. Gross had any knowledge of their unlawful purpose, or any intention of furthering its unlawful end.  Nor can any knowledge or intent be inferred from the Indictment, as the Indictment is replete with

allegations that Mr. Gross's co-defendants and their co-conspirators deceived financial institutions about their unlawful purpose through sophisticated means.

To establish a violation of 18 U.S.C. § 215(a)(2), it is not enough that the person offering a payment has a corrupt intent, the recipient of the payment himself must also have a corrupt intent. *See United States v. Ford,* 435 F.3d 204, 213-14 (2d Cir. 2006) (reversing bribery conviction under 18 US.C. § 666(a)(1)(B), which contains language similar to 18 U.S.C. § 215, because jury instructions did not make clear that it was the defendant's intention in accepting the payment that was the relevant inquiry, not that of the person offering the payment).  Without any allegations that Mr. Gross knew of the unlawful Bitcoin scheme and intended to facilitate it, the alleged corrupt intent of Mr. Gross's co-defendants cannot be imputed to him, and there are no other allegations establishing an intended unlawful end, or an intended lawful end to be achieved through unlawful means.

There is nothing inherently corrupt or unlawful about placing the names of individuals in nomination for a position on the Board of Directors of a credit union, and there are no allegations that any laws, regulations, policies, procedures or duties were violated in the nomination or election of these individuals to the Board.  As set forth in the Federal Credit Union Handbook published by the National Credit Union Administration, which regulates credit unions, any member of a credit union can become a director.  NATIONAL CREDIT UNION ADMINISTRATION, FEDERAL CREDIT UNION HANDBOOK 13, *available at* https://www.ncua.gov/Resources/Documents/CUDev/fcu_handbook.pdf ("The board of directors is elected by the members from the membership.")

Since there are no allegations that Mr. Gross had any knowledge that members of the Collectables Club or the individuals nominated to Board positions were engaged in any unlawful

or otherwise wrongful conduct, the basis for the government's contention that Mr. Gross acted "corruptly" in "allowing and assisting" these individuals to become Board members is entirely unclear.  Moreover, the government declined to provide particulars about what unlawful end Mr. Gross is alleged to have "voluntarily and intentionally" intended to achieve, or what lawful end he is alleged to have intended to achieve through unlawful means.

The government uses the generic term "bribes" in the Indictment to characterize payments made to Mr. Gross, but to qualify as a "bribe," the government must allege an intended violation of a known duty.  *See e.g.*, *U.S. ex rel. Sollazzo v. Esperdy*, 285 F.2d 341, 342 (2d Cir. 1961) ("Bribery in essence is an attempt to influence another to disregard <u>his duty</u> while continuing to appear devoted to it or to repay trust with disloyalty.") (emphasis added); *United States v. Ramming*, 915 F. Supp. 854, 865 (S.D. Tex. 1996) ("No jury could find, beyond a reasonable doubt, that the acts…constituted a bribe of bank officials because no request was made of a bank official that was in violation of the officials' duty.").  Here, no intended violation of a law or duty by Mr. Gross has been alleged.  Thus, characterizing the payments as a "bribe" without supplying the factual or legal predicate to qualify the payments as a bribe fails to adequately allege the corrupt intent element of 18 U.S.C. § 215.

That payments were allegedly made to unspecified "accounts under Gross's control," even if some unspecified portion of the payments were allegedly spent on unidentified personal expenses, is not enough to allege a violation of 18 U.S.C. § 215(a)(2) in the absence of an allegation that Mr. Gross did so with an intent to achieve an unlawful end or a lawful end through unlawful means.  In *United States v. Rooney*, 37 F.3d 847 (2d Cir. 1994), the Second Circuit interpreted 18 U.S.C. § 666, which penalizes the corrupt acceptance of a thing of value intending to be influenced in connection with a federal project in language that closely mirrors

that of 18 U.S.C. § 215.  In *Rooney*, it was undisputed that the defendant "solicited something of value and did so intending to be influenced in connection with some business or transaction." *Id.* at 852.  The Second Circuit nonetheless reversed Rooney's conviction, reasoning that, even though he engaged in a *quid pro quo* exchange, his conduct as a private developer who maintained all liability for repayment of the federal loans associated with his project could not be considered corrupt because "he violated no official or public duty owed to the government or the public at large." *Id.* at 854.  Here, since there is no allegation that Mr. Gross violated any laws or duties, an allegation that he accepted a payment, even if he intended to be influenced, is not enough to allege a crime.

Indeed, the legislative history of 18 U.S.C. § 215 confirms that a payment alone, in the absence of a corrupt intent, is not sufficient to establish a violation of the statute.  Congress explained that the "use of 'corruptly' narrows the current-law offense, which makes *any* seeking or acceptance criminal, without regard to the intent or purpose of the person seeking or accepting the payment." HR. REP. 99-335, 1, 1986 U.S.C.C.A.N. 1782, 1787 (emphasis in original). Additionally, the bribery statute exempts a wide swath of legitimate payments, including payments to credit union employees, from the ambit of the statute, further demonstrating that a corrupt purpose is necessary to make a payment unlawful. *See* 18 U.S.C. § 215 (c) ( exempting "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.")

An indictment must be dismissed where, as here, it fails to adequately allege what makes the defendant's conduct criminal.  In *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000), the defendant was charged with making materially false statements on his tax return by failing to disclose ownership interests in stock, but the indictment did not identify any provisions of the tax

code that would have required the omitted disclosure.  The Second Circuit held that "the indictment must...allege what made the omission in this case criminal."  *Id*. at 93.  Where it failed to do so, even after the defendant requested particulars, the Second Circuit dismissed the indictment because the defendant "was not adequately informed of the nature of the accusation against him, as is his right under the Sixth Amendment" and "the grand jury may not have understood the elements of the crime and the evidence necessary to support the indictment, as required by the Fifth Amendment."  *Id*. at 95.

The Indictment against Mr. Gross must similarly be dismissed because the allegations are insufficient to allege an essential element of the offense – a corrupt intent.  Given the dearth of allegations as to Mr. Gross's corrupt intent, there are no assurances that the grand jury understood that Mr. Gross himself must have accepted payments with an intent to achieve an unlawful end or a lawful end through unlawful means, and found sufficient evidence to indict him under that standard.  *Pirro*, 212 F.3d at 92.  ("If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him.").  Accordingly, the Indictment must be dismissed.

## POINT II

## A BILL OF PARTICULARS IS NECESSARY

While a bill of particulars cannot save a deficient Indictment, if the Court declines to dismiss the Indictment, Mr. Gross requests a bill of particulars to clarify the nature of the allegations against him.  Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to

14

interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."
*United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987).   A bill of particulars is required
"when the charges of the indictment are so general that they do not advise the defendant of the
specific acts of which he is accused." *United States v. Santana*, No. 13 CR 147 KMW, 2015 WL
5781413, at *1 (S.D.N.Y. Oct. 1, 2015).

Mr. Gross seeks a bill of particulars here to clarify what laws or duties he is alleged to
have intended to violate.  As noted above, 18 U.S.C. § 215(a)(2) requires that a defendant act
corruptly, which is defined by the Second Circuit as "'act[s] done voluntarily and intentionally
and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or
result by some unlawful method or means." *McElroy*, 910 F.2d at 1021.  It is critical to Mr.
Gross's defense to understand what unlawful end or what lawful end through unlawful means he
is alleged to have intended to achieve.

As noted above, there are no allegations in the Indictment that Mr. Gross had any
knowledge of any unlawful Bitcoin exchange scheme.  The government has produced
voluminous discovery, including several terabytes of data, relating to the unlawful Bitcoin
exchange scheme.  If Mr. Gross is alleged to have intended to further this scheme, he must wade
through, master and prepare a defense based on the evidence contained within this discovery, and
he must grapple with the complex law governing several other counts in the Indictment, even
though he has not been directly charged in those counts.

If, on the other hand, he is not alleged to have intended to further the unlawful Bitcoin
exchange scheme, the unlawful end or lawful end though unlawful means he intended to achieve
is entirely unclear.  If there is some law, regulation, policy, procedure or other cognizable legal
duty he is alleged to have violated, Mr. Gross must be sufficiently apprised of it to permit him to

prepare a defense. *See, e.g.*, *United States v. Scully*, 108 F. Supp. 3d 59, 126 (E.D.N.Y. 2015) (granting a request for a bill of particulars as to "the specific fraud alleged in each count.") At minimum, the Indictment must inform a defendant of "the elements of the offense intended to be charged," and must "sufficiently apprise[] the defendant of what he must be prepared to meet." *Russell*, 369 U.S. at 763. A bill of particulars as to what conduct the government alleges makes Mr. Gross's conduct criminal is essential for the Indictment to meet this threshold function.

Mr. Gross also seeks a bill of particulars as to the basis for the government's assertion that he engaged in criminal conduct in the Southern District of New York. *See* Indictment ¶ 23. Mr. Gross is a resident of New Jersey, and was the Chairman of the Board of a credit union based in New Jersey. *Id.* ¶ 2. Nothing in the Indictment suggests that he solicited or accepted any payments in the Southern District of New York, and the discovery reviewed to date reveals no outreach by Mr. Gross to the Southern District of New York in connection with the alleged offense. A bill of particulars as to the basis for the government's assertion that his alleged crime was committed "in the Southern District of New York and elsewhere," *see id.* ¶ 23, is necessary in order to prepare a defense based on lack of venue. *See United States v. Wilson*, 2001 WL 798018, *6 (S.D.N.Y.2001) (requiring government to provide "bill of particulars describing facts it intends to establish at trial which it claims are sufficient to establish venue in this district"); *United States v. Szur*, 1998 WL 132942, *12 (S.D.N.Y.1998) (ordering a bill of particulars "detailing the basis for venue in this district" where it was unclear from the Indictment what acts were committed in the Southern District of New York); *United States v. Louissaint*, No. 12-CR-6081L, 2016 WL 47476, at *2 (W.D.N.Y. Jan. 4, 2016), *objections overruled*, No. 6:12-CR-06081, 2016 WL 543238 (W.D.N.Y. Feb. 10, 2016) ("some further particularization as to the mail fraud counts is justified to evaluate and determine defendants' venue challenge.")

## CONCLUSION

For the foregoing reasons, the defendant Trevon Gross respectfully requests that the Court grant his motion to dismiss, or, alternatively, his demands for a bill of particulars.

Respectfully submitted,

*Kristen M. Santillo*

HENRY E. KLINGEMAN, ESQ.
KRISTEN M. SANTILLO, ESQ.
*Attorneys for Defendant*
*Trevon Gross*

Dated:  June 17, 2016

17