UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :
                                        :
          - v. -                        :           S3 15 Cr. 769 (AJN)
                                        :
ANTHONY MURGIO,                         :
MICHAEL J. MURGIO,                      :
YURI LEBEDEV, and                       :
TREVON GROSS,                           :
                                        :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**JOINT REQUESTS TO CHARGE**

# TABLE OF CONTENTS

INTRODUCTORY INSTRUCTIONS ....................................................................... 4

   Role of the Court ........................................................................................... 4

   Role of the Jury ............................................................................................. 5

   Statements of Counsel and Court Not Evidence;  Jury's Recollection Controls ...................... 6

   Improper Considerations ................................................................................ 7

   All Parties Are Equal Before the Law ............................................................ 8

   The Indictment ............................................................................................. 9

   Presumption of Innocence and Burden of Proof ........................................... 10

   Reasonable Doubt ........................................................................................ 11

GENERAL INSTRUCTIONS ............................................................................... 13

   Direct and Circumstantial Evidence ............................................................. 13

   Inferences ................................................................................................... 14

   Credibility of Witnesses ............................................................................... 16

   Defendants' Right Not to Testify .................................................................. 18

   Defendants' Testimony ................................................................................ 19

   Law Enforcement Witnesses ........................................................................ 20

   Accomplice/Cooperating Witness Testimony ............................................... 21

   Persons Not on Trial .................................................................................... 25

   Uncalled Witnesses Equally Available ......................................................... 26

   Preparation of Witnesses ............................................................................. 27

   Investigative Techniques ............................................................................. 28

   Use of Electronic Communications .............................................................. 29

   Use of Evidence From Searches ................................................................... 30

   Recordings/Transcripts ................................................................................ 31

   Stipulations ................................................................................................. 32

   Use of Charts and Tables ............................................................................. 33

   Excerpts and Redactions .............................................................................. 34

CHARGE .......................................................................................................... 35

   Summary of the Indictment .......................................................................... 35

   Consider Each Defendant Separately ............................................................ 36

   Multiple Counts, Multiple Defendants .......................................................... 37

   Counts One and Two:  Overview .................................................................. 38

   Count Two: Operation of Unlicensed Money Transmitting Business ............. 39

   Count Two, First Element:   Money Transmitting Business ........................... 41

   Count Two, Second [Third] Element:   Unlicensed Money Transmitting Business ................ 45

   Count Two, Second [Third] Element, First Prong:  Failure to Comply with Florida State
      Licensing Requirements ........................................................................ 47

   Count Two, Second [Third] Element, Second Prong:  Failure to Comply with Federal
      Registration Requirements .................................................................... 50

   Count Two, Second [Third] Element, Third Prong:  Knowing Transmission of Criminal Funds
      ......................................................................................................... 51

Count Two, Second [Third] Element, Third Prong: Extortion in Furtherance of Ransomware Schemes ................................................................................................................. 53
Count Two, Third [Fourth] Element: Operation ........................................................... 55
Count Two, Fourth [Fifth] Element: Interstate or Foreign Commerce ...................... 56
Count Two: Unanimity as to Basis for Conviction ....................................................... 57
Count One: Conspiracy to Operate an Unlicensed Money Transmitting Business ................ 58
Count One, First Element: Existence of the Conspiracy ............................................... 59
Count One, Second Element: Participation in the Conspiracy ..................................... 60
Count One, Third Element: Overt Act ......................................................................... 61
Count One: Liability for Acts and Declarations of Co-Conspirators ......................... 62
Counts Three and Four: Overview ............................................................................... 63
Count Four: Making Corrupt Payments to an Officer of a Financial Institution ................ 64
Count Four, First Element: Giving Something of Value .............................................. 65
Count Four, Second Element: Recipient Was an Officer of a Financial Institution ................ 66
Count Four, Third Element: Corrupt Intent to Influence Business of the Financial Institution 67
Count Four, Fourth Element: Value Greater Than $1,000 .......................................... 69
Count Five: Accepting Corrupt Payments as an Officer of a Financial Institution ................ 70
Counts Three Through Five: Bona Fide Payments ...................................................... 72
Counts Six and Eight: Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering ................................................................................................................. 73
Count Seven: Wire Fraud ............................................................................................. 74
Count Seven, First Element: Scheme or Artifice to Defraud ...................................... 75
Count Seven, Second Element: Knowledge and Intent to Defraud .......................... 79
Count Seven, Third Element: Use of Interstate Wires ................................................ 82
Count Nine: Money Laundering ................................................................................... 83
Count Nine, First Element: Transportation of a Monetary Instrument or Funds to or from the United States ............................................................................................................... 84
Count Nine, Second Element: Intent to Promote Specified Unlawful Activity ...................... 85
OTHER INSTRUCTIONS ................................................................................................. 86
Conscious Avoidance ..................................................................................................... 86
Aiding and Abetting ...................................................................................................... 88
Venue ............................................................................................................................. 90
Variance in Dates .......................................................................................................... 93
Punishment .................................................................................................................... 94
Juror Note-Taking ......................................................................................................... 95
CONCLUDING REMARKS ............................................................................................... 96

## INTRODUCTORY INSTRUCTIONS

### Role of the Court

You have now heard all of the evidence in the case, as well as the final arguments of the lawyers for the parties.  My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you.  Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.  If an attorney or anyone else at trial has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  You may take a copy of these instructions with you into the jury room.

<u>Role of the Jury</u>

Your role is to pass upon and decide the fact issues that are in the case.  You, the members of the jury, are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence or lack of evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw solely based on the evidence and from the facts as you have determined them.

The evidence before you consists of the answers given by witnesses and the exhibits and stipulations that were received into evidence.  In determining the facts, you must rely upon your own recollection of the evidence.  I will instruct you at the end of these charges about your ability to request to have testimony read back and your access to other evidence admitted during the trial.

<u>Statements of Counsel and Court Not Evidence;</u>
<u>Jury's Recollection Controls</u>

What the lawyers have said in their opening statements, in their objections, and in their questions, and what they may say in their closing arguments, is not evidence. You should bear in mind that a question put to a witness is not evidence. It is the question coupled with the answer that constitutes evidence.

In addition, what I say is not evidence. If I have sustained an objection to a question or stricken testimony, any stricken answers given by a witness are not part of the evidence in this case, and you may not consider them.

You should draw no inference or conclusion for or against any party because of lawyers' objections. Bear in mind that counsel have not only the right but the duty to make legal objections when they think that such objections are appropriate.

Also, do not draw any inferences from any of my rulings. The rulings I have made during trial are not any indication of my views of what your verdict should be. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party in the case, because of any comment, question, ruling, or instruction of mine.

### Improper Considerations

Your verdict must be based solely upon the evidence or the lack of evidence.  It would be improper for you to consider any personal feelings you may have about the defendants' race, ethnicity, national origin, nationality, age, or any other such factor.  It also would be improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

I remind you that before each of you was accepted and sworn to act as a juror, you were asked questions concerning competency, qualifications, fairness, and freedom from prejudice and bias.  On the faith of those answers, you were accepted as jurors by the parties.  Therefore, those answers are as binding on each of you now as they were then, and should remain so, until the jury is discharged from consideration of this case.

<u>All Parties Are Equal Before the Law</u>

In reaching your verdict you must remember that all parties stand equal before a jury in the courts of the United States.  You should give no weight whatsoever to the fact that this prosecution is brought in the name of the United States of America.  The Government is entitled to no greater consideration than that given to any other party to litigation.  By the same token, the Government is entitled to no less consideration.

<u>The Indictment</u>

The defendants ANTHONY MURGIO, MICHAEL MURGIO, TREVON GROSS, and YURI LEBEDEV, have been formally charged in what is called an "Indictment."

As I instructed you at the outset of this trial, the Indictment is simply an accusation.  It is not evidence.  It is no more than a statement of the charges made against the defendants and the means by which a criminal case is started. You must give no weight to the fact that an Indictment has been returned against the defendants.

 Each defendant begins trial with an absolutely clean slate and without any evidence against him.  The charges in the Indictment are merely accusations.  What matters is the evidence that has been presented at the trial and the lack of evidence.

The indictment in this case consists of nine separate charges, or counts.  Each count charges the Defendant or Defendants named in that count with a particular crime.  Not all of the Defendants are charged in each count.  You must consider each count and each defendant separately and return a separate verdict of guilty or not guilty for each.  Whether you find a particular defendant guilty or not guilty as to one offense should have no bearing on your verdict as to the other offenses charged.

I will not read the entire Indictment to you at this time.  You will have a copy of the Indictment with you in the jury room and will have an opportunity to read it in its entirety. Rather, in a moment, I will summarize the charges in the Indictment and then explain in detail the elements of each crime that is charged.

<u>Presumption of Innocence and Burden of Proof</u>

The law presumes the Defendants to be innocent of all charges against them.  They have pleaded not guilty to the charges in the Indictment.  As a result, the burden is on the Government to prove each of the defendants' guilt beyond a reasonable doubt.  This burden never shifts to the defendants.  In other words, they do not have to prove their innocence.

. This presumption of innocence was with the defendants when the trial began remains with the defendants until such time, if ever, that you, the jury, are unanimously convinced that the Government has proved a particular defendant's guilt beyond a reasonable doubt.

[*If necessary*:  Even though the defendants have called witnesses in this case, the presumption of innocence remains with them, and the Government still has the burden of proof beyond a reasonable doubt.]

<u>Reasonable Doubt</u>

The question that naturally arises is: "What is a reasonable doubt?"  What does that phrase mean?  The words almost define themselves.  A reasonable doubt is a doubt based in reason and arising out of the evidence in the case, or the lack of evidence.  It is a doubt that a reasonable person has after carefully weighing all of the evidence in the case.

Reasonable doubt is a doubt that appeals to your reason, your judgment, your experience, and your common sense.  Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his or her own affairs; in other words, if you have such a doubt as would reasonably cause a prudent person to hesitate in acting in important matters in his or her own affairs, then you have a reasonable doubt, and in that circumstance, it is your duty to find the defendant not guilty.

Reasonable doubt is not whim or speculation.  It is not an excuse to avoid the performance of an unpleasant duty.  Nor is it sympathy for the defendant you are considering.  "Beyond a reasonable doubt" does not mean mathematical certainty, or proof beyond all possible doubt.  The law in a criminal case is that it is sufficient if the guilt of the defendant is established beyond a reasonable doubt, not beyond all possible doubt, and, therefore, if after a fair and impartial consideration of all of the evidence, you are satisfied beyond a reasonable doubt of a defendant's guilt with respect to a particular charge against him, you should find that defendant guilty of that charge.

But, by same token, unless you find that the Government has proven beyond a reasonable doubt each element of the offense you are considering with respect to a particular defendant, you must find that defendant not guilty of that offense.  If the evidence does not leave you with an abiding conviction of defendant's guilt and you are left after considering the evidence and the

11

lack of evidence with such a doubt as would cause you as a reasonable and prudent person to hesitate before acting in affairs of importance in your own life, then in that circumstance it is your duty to return a verdict of not guilty as to that charge.

**GENERAL INSTRUCTIONS**

<u>Direct and Circumstantial Evidence</u>

There are two types of evidence that you may use in reaching your verdict.  One type of evidence is direct evidence.  One kind of direct evidence is a witness's testimony about something that he or she knows by virtue of his or her own senses—something that the witness has seen, smelled, touched, or heard.  Direct evidence may also be in the form of an exhibit.

The other type of evidence is circumstantial evidence.  Circumstantial evidence is evidence that tends to prove one fact by proof of other facts.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may explain the water on the sidewalk.  Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

That is all there is to circumstantial evidence.  You infer based on reason, experience, and common sense from an established fact the existence or the nonexistence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting each defendant, you, the jury, must be satisfied of each  defendant's guilt beyond a reasonable doubt from all the evidence in the case.

<u>Inferences</u>

During the trial, and as I give you these instructions, you have heard and will hear the term "inference." For instance, in their closing arguments, the attorneys have asked you to infer, based on your reason, experience, and common sense, from one or more established facts, the existence of some other fact. I have instructed you on circumstantial evidence and that it involves inferring a fact based on other facts, your reason, and common sense.

What is an "inference"? What does it mean to "infer" something? An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists based on another fact that you are satisfied exists.

There are times when different inferences may be drawn from facts, whether proven by direct or circumstantial evidence. The Government asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted but not required to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

Therefore, while you are considering the evidence presented to you, you may draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

Some inferences, however, are impermissible. You may not infer that a defendant is guilty of participating in criminal conduct if you find merely that he was present at the time the crime was being committed and had knowledge that it was being committed. Nor may you use

evidence that I have instructed you was admitted for a limited purpose for any inference beyond that limited purpose.

In addition, you may not infer that a defendant is guilty of participating in criminal conduct merely from the fact that he associated with other people who were guilty of wrongdoing or merely because he has or had knowledge of the wrongdoing of others.

Here again, let me remind you that, whether based upon direct or circumstantial evidence, or upon the logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of each defendant you are considering beyond a reasonable doubt before you may convict that defendant of any of the crimes charged.

**If two inferences may equally logically be drawn from the evidence, one consistent with guilt and the other consistent with non-guilt, the defendant is always entitled to the inference consistent with non-guilt.   [The Government objects to this sentence as unnecessary to explain inferences.]**

<u>Credibility of Witnesses</u>

You have had the opportunity to observe the witnesses.  It is your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of the witnesses.  How do you evaluate the credibility or believability of the witnesses?  The answer is that you use your common sense, judgment, and experience.  Common sense is your greatest asset as a juror.  You should ask yourselves, did the witness impress you as honest, open, and candid?  Or did the witness appear evasive, as though the witness was trying to hide something?  How responsive was the witness to the questions asked on direct examination and on cross-examination?   Consider the witness's demeanor, manner of testifying, and accuracy of the witness's recollection.  In addition, consider how well the witness recounted what was heard or observed, as the witness may be honest but mistaken.

If you find that a witness is intentionally telling a falsehood that is always a matter of importance that you should weigh carefully.  If you find that any witness has lied under oath at this trial, you should view the testimony of such a witness cautiously and weigh it with great care.  You may reject the entirety of the witness testimony, part of it or none of it.  It is for you to decide how much of any witness's testimony, if any, you wish to credit.   A witness may be inaccurate, contradictory, or even untruthful in some respects and yet entirely believable and truthful in other respects.  It is for you to determine whether such untruths or inconsistencies are significant or inconsequential, and whether to accept or reject all or to accept some and reject the balance of the testimony of any witness.

On some occasions during this trial, witnesses were asked to explain an apparent inconsistency between testimony offered at this trial and previous statements made by the witness.  It is for you to determine whether a prior statement was inconsistent, and if so, how much (if any) weight to give to an inconsistent statement in assessing the witness's credibility at

trial.  You can credit the prior inconsistent statement or credit the witness' statement at trial.  You make the determination based on your assessment of the witness.

In evaluating credibility of the witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of this case.  Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances his own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony and accept it with great care.  This is not to suggest that any witness who has an interest in the outcome of a case would testify falsely.  It is for you to decide to what extent, if at all, the witness's interest has affected or colored his or her testimony.

You are not required to accept testimony even though the testimony is not contradicted and the witness's testimony is not challenged.  You may decide because of the witness's bearing or demeanor, or because of the inherent improbability of the testimony, or for other reasons sufficient to yourselves that the testimony is not worthy of belief.  On the other hand, you may find, because of a witness's bearing and demeanor and based upon your consideration of all the other evidence in the case, that the witness is truthful.

Thus, there is no magic formula by which you can evaluate testimony.  You bring to this courtroom all your experience and common sense.  You determine for yourselves in many circumstances the reliability of statements that are made by others to you and upon which you are asked to rely and act.  You may use the same tests here that you use in your everyday lives.  You may consider the interest of any witness in the outcome of this case and any bias or prejudice of any such witness, and this is true regardless of who called or questioned the witness.

17

Defendants' Right Not to Testify

[if requested by defense]

The defendants did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to a defendant. A defendant is never required to prove that he is innocent.  You may not attach any significance to the fact that the defendants did not testify.  No adverse inference against them may be drawn by you because they did not take the witness stand. You may not consider this against the defendants in any way in your deliberations.

<u>Defendants' Testimony</u>

[if applicable]

A defendant in a criminal case never has any duty to testify or come forward with any evidence. This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the Government at all times, and the defendant is presumed innocent. In this case, however, the defendant(s) did testify and he/they was/were subject to cross-examination like any other witness. You should, therefore, examine and evaluate the defendant's testimony just as you would the testimony of any other witness with an interest in the outcome of the case.

<u>Law Enforcement Witnesses</u>

You have heard the testimony of various members of law enforcement.  The fact that a witness may be employed as a law enforcement official by the United States Government or by a foreign government does not mean that his or her testimony deserves more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the ground that their testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement or Government employee witness, as it is with every other type of witness, and to give that testimony the weight that you find it deserves.

[If applicable:  Some of the testimony you heard from law enforcement agents included testimony concerning what they personally suspected or believed about particular individuals at various points during their investigation.  Such beliefs or suspicions of a law enforcement agent, or any other witness, are not evidence and should be disregarded.]

Accomplice/Cooperating Witness Testimony

You have heard from witnesses who testified that they committed certain of the crimes charged in the Indictment or other crimes.  Some of these witness have testified under the terms of a cooperation agreement or grant of immunity. There has been a great deal said about these so-called cooperating witnesses in the summations of counsel and whether or not you should believe them.  The testimony of such accomplices is properly considered by the jury.  But let me say a few things that you should consider during your deliberations on the subject of cooperating witnesses.  Cooperating witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of the witness's recollection, the witness's background, the extent to which the testimony is or is not corroborated by other evidence in the case, and the witness' personal interest in testifying.

**[The Government proposes that this charge continue as follows:  Because of the interest that a cooperator may have in testifying for the Government, you should scrutinize his or her testimony with special care and caution.   You may consider the fact that a witness is a cooperator as bearing upon his credibility.  You may consider whether a cooperating witness has an interest in the outcome of the case and, if so, whether it has affected his or her testimony.  It does not follow, however, that, simply because a person has admitted to participating in one or more crimes, that person is incapable of giving a truthful version of what happened.**

**You also heard testimony about cooperation agreements between the Government and cooperating witnesses.  The existence of such an agreement itself and its effect on the witness should be considered by you in determining credibility.  Your sole concern is**

whether a witness has given truthful and accurate testimony here in this courtroom before you.

In evaluating the testimony of a cooperating witness, you should ask yourselves whether the witness would benefit more by lying, or by telling the truth.  As with any witness, if you find that the testimony was false, you should reject it.  However, if, after a cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and give the testimony whatever consideration you think it deserves.  As with any witness, the issue of credibility need not be decided in an all-or-nothing fashion.  Even if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.]

[The Defendants propose that this charge continue as follows:  Because of the interest that a cooperator may have in testifying for the Government, you should scrutinize his or her testimony with special care and caution.  While the testimony of cooperators is properly heard by the jury, it is also the case that accomplice testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  Cooperating witnesses have an interest in the case different from that of other witnesses.  A witness who may be able to obtain his freedom or receive a more favorable sentence may have a motive to shape his testimony.  The possibility of securing a more favorable sentence if the government writes a "5K1 letter" to the court stating that the witness has given truthful testimony and significant cooperation gives the witness a direct, personal stake

in the defendant's conviction.  The fact that the opportunity for a lesser sentence was not simply guaranteed in the agreement, but was expressly made contingent in the agreement on the government's satisfaction with the end result, may serve only to strengthen any incentive to testify falsely in order to secure a conviction.  Therefore, the fact that a witness is an accomplice can be considered by you as bearing upon his or her credibility.  You should consider the witness's hopes and expectations of securing future benefits in judging his or her credibility.

It does not follow from all of this, however, that, because a person has admitted to participating in one or more crimes, and entered into a cooperation agreement with the government that that person is incapable of giving a truthful version of what happened.  But the existence of such an agreement itself and its effect on the witness should be considered by you in determining credibility.  Your sole concern is whether a witness has given truthful and accurate testimony here in this courtroom before you.

In evaluating the testimony of accomplice witnesses, you should ask yourselves whether these accomplices would benefit more by lying, or by telling the truth.  Was their testimony made up in any way because they believed or hoped that they would somehow receive more favorable treatment by testifying falsely?  Or did they believe that their interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was that motivation such that it would cause him or her to lie, or was it one that would cause him to tell the truth?  Did this motivation color his testimony?

If, after a cautious and careful examination of the cooperating witness's testimony and demeanor upon the witness stand, you are satisfied that the witness told the truth, you should accept it as credible and give the testimony whatever consideration you think it deserves.  As with any witness, the issue of credibility need not be decided in an all-or-nothing fashion.  Even

if you find that a witness testified falsely in one part, you still may accept his or her testimony in other parts, or may disregard all of it.  That is a determination entirely for you, the jury.]

<u>Persons Not on Trial</u>

You may not draw any inference, favorable or unfavorable, towards the Government or the defendants, from the fact that certain persons were not tried as defendants in this case.   The fact that these persons are not on trial here must play no part in your deliberations.

Uncalled Witnesses Equally Available

[If applicable]

You have heard the names of several people during the course of the trial who did not appear here to testify and one or more of the attorneys may have referred to their absence. You should not draw any inferences or reach any conclusions as to what these persons would have testified to had they been called. Their absence should not affect your judgment in any way. Remember my instruction, however, that the law imposes no duty on the defendant in a criminal case to call any witnesses or produce any evidence.

<u>Preparation of Witnesses</u>

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the Government lawyers, the defense lawyers, or their own lawyers before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I instruct you that there is nothing either unusual or inherently improper about a witness meeting with the Government lawyers, the defense lawyers, or his or her own lawyers before testifying so that the witness can be aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.  Such consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer to call a witness without such consultations.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

Investigative Techniques

You have heard reference through the questioning to the fact that certain investigative techniques were used or not used by the Government.  There is no legal requirement, however, that the Government prove its case through any particular means.  While you are to carefully consider the evidence introduced by the Government, you are not to speculate as to why the Government used the techniques it did, or why it did not use other techniques.  The Government is not on trial.  Law enforcement techniques are not your concern.  Your concern is to determine whether, on the evidence or lack of evidence, the defendants' guilt has been proven beyond a reasonable doubt.

## Use of Electronic Communications

Some of the evidence in this case has consisted of electronic communications seized from computers or electronic accounts.  There is nothing illegal about the Government's use of such electronic communications in this case and you may consider them along with all the other evidence in the case.  Whether you approve or disapprove of the seizure of these communications may not enter your deliberations.

You may, therefore, regardless of any personal opinions, consider this evidence along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendants.  However, as with the other evidence, it is for you to determine what weight, if any, to give such evidence.

Use of Evidence From Searches

You have heard testimony about evidence seized in connection with certain searches conducted by law enforcement officers.  Evidence obtained from these searches was properly admitted in this case, and may be properly considered by you.  Such searches were entirely appropriate law enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful.  You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven each defendant's guilt beyond a reasonable doubt.  As with all evidence, it is for you to determine what weight if any to give such evidence.

Recordings/Transcripts

In connection with the recordings that were introduced into evidence during the trial, you were provided with transcripts of the conversations to assist you while listening to the recordings.  I instructed you during the trial, and I remind you now, that the transcripts are not evidence.  The transcripts were provided only as an aid to you in listening to the recordings.  It is for you to decide whether the transcripts correctly present the conversations recorded on the recordings that you heard.  If you wish to hear any of the recordings again, or see any of the transcripts, they will be made available to you during your deliberations.

## Stipulations

[If applicable]

You have heard some evidence in the form of what are called "stipulations."  A stipulation of fact is an agreement among the parties that a certain fact is true.  You should regard such agreed facts as true.

A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony.  You must accept as true the fact that the witness would have given the testimony.  However, it is for you to determine the effect or weight to give that testimony.

Use of Charts and Tables

[If applicable]

Some of the exhibits were charts, tables, or other forms of summary exhibits.  These exhibits are not direct evidence.  They are graphic representations or other ways of summarizing more voluminous information that was either described in the testimony of a witness or reflected in documents admitted into evidence.  It is often easier and more convenient to use charts, tables, and summaries as opposed to placing all of the underlying documents in front of you.  But it is up to you to decide whether the summary exhibits fairly and correctly reflect the underlying testimony and documents they purport to summarize.  To the extent that the summary exhibits conform to your understanding of the underlying evidence, you may accept them.  To the extent they do not, you should set them aside and rely on the underlying evidence instead.  But one way or the other, realize that the summary exhibits are not in and of themselves direct evidence.  They are merely intended to serve as aids in a party's presentation of the evidence.  They are nothing more.

Excerpts and Redactions

[If applicable]

Some of the exhibits admitted into evidence consist of excerpts of longer documents that were not admitted into evidence in their entirety.  These excerpts are simply the portions of the underlying documents considered to be most relevant to the case by the party introducing them. There is nothing unusual or improper about the use of such excerpts, and you are not to speculate from the use of such excerpts that any relevant portion of a document has been omitted.

Similarly, some of the exhibits admitted into evidence include redactions of certain information.  Again, there is nothing unusual or improper about such redactions, and you are not to speculate from the use of such redactions that any relevant portion of a document has been removed.

**CHARGE**

<u>Summary of the Indictment</u>

The defendants, ANTHONY MURGIO, MICHAEL MURGIO, TREVON GROSS, and YURI LEBEDEV, have been formally charged in a document called an Indictment.  Here, the Indictment contains nine counts.  Not every defendant is named in each count.  You will have a copy of the Indictment with you in the jury room and can read each count in its entirety.  I am going to provide only a brief summary now:

Count One charges ANTHONY MURGIO with conspiring to operate an unlicensed money transmitting business.

Count Two charges ANTHONY MURGIO with actually operating an unlicensed money transmitting business.

Count Three charges ANTHONY MURGIO, MICHAEL MURGIO, and YURI LEBEDEV with conspiring to make corrupt payments with the intent to influence an officer of a financial institution.

Count Four charges ANTHONY MURGIO, MICHAEL MURGIO, and YURI LEBEDEV with actually making and attempting to make corrupt payments with the intent to influence an officer of a financial institution.

Count Five charges TREVON GROSS with accepting corrupt payments as an officer of a financial institution with the intent to be influenced.

Count Six charges ANTHONY MURGIO with conspiracy to commit wire fraud.

Count Seven charges ANTHONY MURGIO with wire fraud.

Count Eight charges ANTHONY MURGIO with conspiring to commit money laundering.

Count Nine charges ANTHONY MURGIO with money laundering.

35

<u>Consider Each Defendant Separately</u>

The Indictment names as defendants ANTHONY MURGIO, MICHAEL MURGIO, YURI LEBEDEV, and TREVON GROSS, who are on trial together. In reaching a verdict, however, you must bear in mind that guilt is individual. Your verdict as to each defendant must be determined separately with respect to him solely on the evidence, or lack of evidence, presented against him without regard to the guilt or innocence of anyone else.

[IF APPLICABLE]

In addition, some of the evidence in this case was limited to one defendant. Let me emphasize that any evidence admitted solely against one defendant may be considered only as against that defendant and may not in any respect enter into your deliberations on any other defendant.

Multiple Counts, Multiple Defendants

As I mentioned, the Indictment contains nine counts and charges four defendants.  Not every defendant is named in every count.

You must, as a matter of law, consider each count of the indictment and each defendant's involvement in that count separately.  You must return a separate verdict on each defendant for each count in which he is charged.

In reaching your verdict, bear in mind again that guilt is personal and individual. Your verdict of guilty or not guilty must be based solely upon the evidence about each defendant. The case against each defendant, on each count in which he is charged, stands or falls upon the proof or lack of proof against that defendant alone, and your verdict as to any defendant on any count should not control your decision as to any other defendant or any other count.

<u>Counts One and Two:  Overview[1]</u>

Let me begin with Counts One and Two of the Indictment.  Count One alleges that ANTHONY MURGIO conspired to conduct, control, manage, supervise, direct, or own an unlicensed money transmitting business, a term which I shall explain in a moment.  Count Two alleges that ANTHONY MURGIO actually conducted, controlled, managed, supervised, directed, or owned an unlicensed money transmitting business.  I will first explain the elements of Count Two, the charge that the ANTHONY MURGIO actually conducted, controlled, managed, supervised, directed, or owned an unlicensed money transmitting business, and then explain the elements of Count One, the charge that ANTHONY MURGIO conspired with others to do so.

---

[1]      **ANTHONY MURGIO submits this charge with the Court's motion rulings in mind, and without waiving any of the positions advanced in pre-trial motions, including his motions to dismiss Counts One and Two of the Indictment.**

<u>Count Two: Operation of Unlicensed Money Transmitting Business</u>

Count Two alleges that ANTHONY MURGIO conducted, controlled, managed, supervised, directed, or owned an unlicensed money transmitting business, specifically Coin.mx. In order for you to find ANTHONY MURGIO guilty on this charge, you must find the Government has proven the following elements beyond a reasonable doubt:

<u>First</u>, that Coin.mx was a money transmitting business.

<u>Second</u>, that Coin.mx was an *unlicensed* money transmitting business.  A money transmitting business can be unlicensed in one of three ways under federal law, which I shall explain for you in a moment.

<u>Third,</u> that ANTHONY MURGIO knowingly conducted, controlled, managed, supervised, directed, or owned all or a part of Coin.mx; and

<u>Fourth,</u> that the operation of Coin.mx affected interstate or foreign commerce.

**[ANTHONY MURGIO requests that the following additional element be inserted as the second element in this charge and that the Government be required to prove a total of five elements, pursuant to *United States* v. *Elfgeeh*, 515 F.3d 100, 133 (2d Cir. 2008):**

**Second, that ANTHONY MURGIO knew that Coin.mx was engaged in the business of money transmitting.]**

**[The Government's proposed charge is adapted from Sand's Modern Federal Jury Instruction No. 50A-34.  The Government objects to ANTHONY MURGIO's proposed additional element because the knowledge required under *United States* v. *Elfgeeh* is already incorporated into the existing charge in the proposed second and third elements, as**

set forth in the Government's reply brief in support of its motions *in limine*.  (*See* ECF No.

219, at 2-7)].

Count Two, First Element:
Money Transmitting Business

The first element the Government must prove beyond a reasonable doubt is that Coin.mx was an unlicensed money transmitting business.  A "money transmitting business" is any business that transfers funds on behalf of the public, by any means, in exchange for a commission or fee.  The word "funds" includes any currency, money, or other medium of exchange, including virtual currencies like Bitcoin, that can be used to pay for goods and services.

**[ANTHONY MURGIO requests the addition of the following language: Transmitting requires the sending of funds to a third party recipient to a place that the customer designates.  Merely selling bitcoins to a customer is not transmission.]**

**[The Government objects to this additional language as inaccurate because transmission does not necessarily require the sending of funds to a third party.  Rather, transmission encompasses the transfer of funds on behalf of one customer *from one location to another location*, for instance from one Bitcoin wallet associated with a particular Bitcoin exchange to another Bitcoin wallet not associated with that exchange.  *See United States* v. *Murgio*, No. 15 Cr. 769 (AJN), Slip Op. 11 (S.D.N.Y. Sept. 19, 2016) (noting that "both parties acknowledge . . . that if the evidence at trial demonstrates that Coin.mx 'transmitted bitcoins to another location *or* person for its customers,' then that evidence would establish that Coin.mx was a money transmitting business." (quoting Murgio MTD Br. 15; Gov't Opp'n Br. 23-24) (emphasis added)).  Moreover, "merely selling" bitcoins to a customer could constitute transmission if, for example, the customer purchased the bitcoins on Coin.mx and simultaneously instructed Coin.mx to transfer the bitcoins to another location.]**

A "business" is a commercial enterprise which is regularly carried on for profit.

**[ANTHONY MURGIO requests the following language: Thus, isolated instances of transmitting funds is not a business under this definition.]** **[The Government requests the following language instead: Thus, a single isolated transmitting of funds is not a business under this definition.[2]]**

A business need not have a physical storefront, be formally incorporated, or otherwise operate in a conventional manner in order to be a money transmitting business.  Any person or entity that transfers funds on behalf of the public in exchange for a commission or fee, by any means, qualifies as a money transmitting business, regardless of how the business is run or organized.

---

[2]       *See* **Modern Federal Jury Instructions, Instr. 50A-34 ("Thus, a single isolated transmitting of money is not a business under this definition."); *accord United States* v. *Velastegui*, 199 F.3d 590, 595 n.4 (2d Cir. 1999) ("[S]ection 1960(a) requires that the unlicensed entity be "an illegal money transmitting *business*" (emphasis added) which insures that persons or entities cannot be prosecuted for a single, isolated transmission of money.").**

[ANTHONY MURGIO proposes the following instruction as to the additional element he seeks to include in the charge.]  [The Government objects because the knowledge required under *Elfgeeh* is already incorporated into the existing charges for the proposed second and third elements, as set forth in the Government's reply brief in support of its motions *in limine*.  (*See* ECF No. 219, at 2-7)].

**Count Two, Second Element: Knowledge of Engagement in Money Transmitting**

The second element the Government must prove beyond a reasonable doubt is that ANTHONY MURGIO knew that Coin.mx was engaged in money transmitting under Section 1960.

To do something "knowingly," is do it voluntarily and intentionally, not because of mistake or accident.

Therefore, even if you find that Coin.mx was engaged in money transmitting under Section 1960 and that Anthony Murgio conducted, controlled, managed, supervised, directed, or owned Coin,mx, if you find that the government has failed to prove beyond a reasonable doubt that Anthony Murgio knew that the business was engaged in money transmitting under Section 1960,  then you must find  this element is not satisfied and the Defendant is not guilty as to this Count.

Thus, to repeat if you have not found both of these two elements as I have just explained them to you proved by the Government beyond a reasonable doubt –- namely that ANTHONY MURGIO conducted, controlled, managed, supervised, or owned  a money transmitting business, and that ANTHONY MURGIO knew that that business was engaged in money transmitting under Section 1960 – then you must find ANTHONY

MURGIO not guilty of the charges in Counts One and Two, and you should move on to a consideration of other charges in the Indictment.

Count Two, Second [Third] Element:
Unlicensed Money Transmitting Business

If you have found that the Government has proved that Coin.mx was a money

transmitting business under Section 1960 **[ANTHONY MURGIO proposes the addition of the**

**following language:  and that the Government has proved beyond a reasonable doubt that**

**ANTHONY MURGIO knew it was engaged in money transmitting]** **[The Government**

**objects to that language**], the next question you must consider is whether it was an *unlicensed*

money transmitting business as that term is defined in federal law.

Under federal law, a money transmitting business can be considered *unlicensed* in three

different ways:

First, a money transmitting business is unlicensed if it was operated without an

appropriate money transmitting license required under state law;

Second, a money transmitting business is unlicensed if it fails to comply with the money

transmitting business registration requirements under federal law;

Third, regardless of whether a business complies with such licensing and registration

requirements, a business is considered an unlicensed money transmitting business if it involves

the transmission of funds that the operator of the business knows are derived from a criminal

offense or are intended to be used to promote or support unlawful activity.

Count Two alleges that Coin.mx was a money transmitting business and was unlicensed

in all three ways that I just described.  First, Count Two alleges that Coin.mx was operated

without an appropriate money transmitting license required under Florida law.  Second, Count

Two alleges that Coin.mx failed to comply with money transmitting business registration

requirements under federal law by failing to register as a money transmitting business with the

Financial Crimes Enforcement Network of the U.S. Department of Treasury, also known as

"FinCEN."  And third, Count Two alleges that Coin.mx involved the transmission of funds that ANTHONY MURGIO knew were derived from a criminal offense or were intended to be used to promote or support unlawful activity.

I will now explain in more detail what you must consider in determining whether the Government has proven beyond a reasonable doubt that Coin.mx was an unlicensed money transmitting business in any of these three ways.

Count Two, Second [Third] Element, First Prong:
Failure to Comply with Florida State Licensing Requirements

The first of the three ways the Indictment alleges that Coin.mx was unlicensed is that it operated without the appropriate license required under Florida law.

[**The Government proposes the following language:**  If you find that Coin.mx was a money transmitting business, then I instruct you that under the laws of the state of Florida, Coin.mx was required to be licensed with Florida. [3]]

[**ANTHONY MURGIO proposes the following language:**  Florida law makes it a crime to operate as an unlicensed money service business.  A money service business is in turn defined as a person or business who or which acts as a payment instrument seller, foreign currency exchanger, check casher or money transmitter.

Here, the government alleges Coin.mx was a money transmitter, and that is the basis on which it alleges a Florida license was required.

Under Florida law, a money transmitter means a person or entity which receives currency, monetary value, or payment instruments for the purpose of transmitting same by any means including by wire, facsimile, electronic transfer, courier, the internet, or through bill payment services or other businesses that facilitate such transfer within this country, or to or from this country.[4]  Another way to look at it is that a money transmitter

---

[3]   *See* **Modern Federal Jury Instructions, Instr. 50A-34 cmt. ("[T]he question whether a license is required and whether the failure to obtain such a license is criminally punishable are preliminary questions of law for the court. Thus, the recommended instruction asks the jury to determine whether the business was licensed, but not whether a license was required."); *United States* v. *Murgio*, No. 15 Cr. 769 (AJN), Slip Op. 14 (S.D.N.Y. Sept. 19, 2016) ("Murgio points to no reason that a 'money transmitting business' under federal law is not a 'money transmitter' under Florida law.").[4]        Fla Statute § 560.103(23).**

[4]        **Fla Statute § 560.103(23).**

receives money from a customer and transmits that money to a recipient, operating like a

middleman in the financial transaction.

If you determine based on the evidence that Coin.mx was in the business of

receiving currency, monetary value, or payment instruments and transmitting these to a

third party, then this element is satisfied, and you should go on to consider the remaining

elements to determine whether Anthony Murgio has been proven to have operated an

unlicensed money transmitting business under Florida state law.]


[ANTHONY MURGIO proposes the following language:  If you find that under

Florida state law, Coin.mx was a money transmitter, you must then determine whether

Coin.mx failed to obtain an appropriate license at any time when it was operating in

Florida.]

[The Government proposes the following language instead:  To satisfy this element,

you must determine whether Coin.mx failed to obtain an appropriate license at any time

when it was operating in Florida.]

The Government does not have to prove that ANTHONY MURGIO knew that Florida

law required that Coin.mx be licensed with the State of Florida, or that ANTHONY MURGIO

was otherwise familiar with the details of Florida state law applicable to money transmitters.[5]

---

[5]      See H.R. Rep. 107-250, pt. I, at 54 (2001) ("[A]n offense under § 1960 is a general intent
crime for which a defendant is liable if he knowingly operates an unlicensed money transmitting
business.  For purposes of a criminal prosecution, the Government would not have to show that
the defendant knew that a State license was required or that the Federal registration requirements
promulgated pursuant to 31 U.S.C. § 5330 applied to the business."); *United States v. Elfgeeh*,
515 F.3d 100, 132-33 (2d Cir. 2008) (holding that the Government now "need prove only that
the defendant had 'know[ledge]' that the business was 'an unlicensed money transmitting
business.'" (quoting 18 U.S.C. § 1960(a), as amended)).

The Government is required, however, to prove beyond a reasonable doubt that ANTHONY MURGIO operated a money transmitting business, as I have already explained, and that he knew that business was unlicensed.  Thus, as long as Coin.mx was a money transmitting business that failed to obtain a license in Florida, and ANTHONY MURGIO knew that Coin.mx was unlicensed – that is, he was not under a mistaken impression that the business actually *was* licensed with the State of Florida – then this element is satisfied.

<u>Count Two, Second [Third] Element, Second Prong:</u>
<u>Failure to Comply with Federal Registration Requirements</u>

The second way the Indictment alleges that Coin.mx was an unlicensed money transmitting business is that it failed to comply with federal registration requirements applicable to money transmitting businesses.  This is called the federal prong of 18 U.S.C. Sec 1960.  **[The Government proposes the following additional language:  If you find that Coin.mx was a money transmitting business, then I instruct you that under federal law, Coin.mx was required to be registered with FinCEN.]  [ANTHONY MURGIO objects to this language.]**

To satisfy this element, you must determine whether Coin.mx failed to register with FinCEN at any time when it was operating.  The Government does not have to prove that ANTHONY MURGIO knew that federal law required Coin.mx to be registered with FinCEN, or that ANTHONY MURGIO was otherwise familiar with the details of federal law and regulations applicable to money transmitting businesses.[6]  The Government is required, however, to prove beyond a reasonable doubt that ANTHONY MURGIO knew that Coin.mx was not registered with FinCEN.  Thus, as long as Coin.mx failed to register with FinCEN, and ANTHONY MURGIO knew that Coin.mx was unregistered – that is, he was not under a mistaken impression that the business actually *was* registered with FinCEN – then this element is satisfied.

---

[6]     *See* H.R. Rep. 107-250, pt. I, at 54 (2001) ("[A]n offense under § 1960 is a general intent crime for which a defendant is liable if he knowingly operates an unlicensed money transmitting business.  For purposes of a criminal prosecution, the Government would not have to show that the defendant knew that a State license was required or that the Federal registration requirements promulgated pursuant to 31 U.S.C. § 5330 applied to the business."); *United States v. Elfgeeh*, 515 F.3d 100, 132-33 (2d Cir. 2008) (holding that the Government now "need prove only that the defendant had 'know[ledge]' that the business was 'an unlicensed money transmitting business.'" (quoting 18 U.S.C. § 1960(a), as amended)).

Count Two, Second [Third] Element, Third Prong:
Knowing Transmission of Criminal Funds

Count Two also alleges that Coin.mx was an unlicensed money transmitting business by virtue of transmitting funds that ANTHONY MURGIO knew were derived from or intended to be used to promote or support criminal activity.  In evaluating this charge, you must find the Government has proved the following beyond a reasonable doubt:

First, you must find that Coin.mx transmitted funds that were derived from a criminal offense or intended to be used to promote or support unlawful activity.  You need not find that all of the funds transmitted by Coin.mx were connected to criminal activity in these ways. Rather, you need only find that Coin.mx's business to some degree involved the transmission of funds that were derived from the designated criminal offense charged, or that they were intended to promote or support that particular unlawful activity.

Second, if you find that Coin.mx's business did involve the transmission of such funds, you must find that at the time the funds were transmitted, ANTHONY MURGIO knew the funds were derived from criminal offenses or he intended them to be used to promote or support unlawful activity.

**[The Government proposes the following additional language:  Whether ANTHONY MURGIO acted with the required knowledge may be proven by his conduct and by all of the facts and circumstances surrounding the case.   In particular, you may consider whether ANTHONY MURGIO deliberately closed his eyes to the source or purpose of the funds at issue.  If you find beyond a reasonable doubt that ANTHONY MURGIO knew there was a high probability that Coin.mx was transmitting funds that were derived from or intended to promote or support criminal or unlawful activity, but that ANTHONY MURGIO consciously avoided looking further into the matter, then you**

may find that he acted with the required knowledge.  However, guilty knowledge may not be established by demonstrating that ANTHONY MURGIO was careless, negligent, foolish, or mistaken.  If you find that ANTHONY MURGIO genuinely believed that the funds at issue were not derived from or intended to promote or support criminal or unlawful or activity, then you must find this knowledge element has not been satisfied.]

[ANTHONY MURGIO objects to the inclusion of any such conscious avoidance charge.]

[**ANTHONY MURGIO proposes the following additional language:**  These are rather ordinary words – "derived from", "promote", and "support" -- but since Congress has used them in the federal criminal statute the Government alleges ANTHONY MURGIO violated here, and their meaning  has significant impact on how you determine guilt or non-guilt on this Count, I will define them  here.

To "derive from" means to come from a particular source or origin.

To "promote" means to further the progress of something, especially a cause, venture, or aim; to support or actively encourage.

To "support", actually a synonym of the word "promote", is to do something to show you approve of someone or something, and to give help or assistance.[7]]

[The Government objects to this additional language because the meaning of these terms are self-explanatory and ANTHONY MURGIO cites no legal basis for his proposed definitions.]

---

[7]     Definitions are from the Merriam-Webster online dictionary.

Count Two, Second [Third] Element, Third Prong:
Extortion in Furtherance of Ransomware Schemes

You have heard references during the trial to extortion in furtherance of ransomware schemes.

[**The Government proposes the following language:** **In determining whether Coin.mx involved the transmission of funds that ANTHONY MURGIO knew to be derived from, or intended to promote or support, unlawful activity, you may consider in particular whether Coin.mx involved the transmission of funds ANTHONY MURGIO knew to be derived from or intended to promote or support extortion in furtherance of ransomware schemes.]**

[**ANTHONY MURGIO proposes the following language instead:** **In determining whether ANTHONY MURGIO knew funds transmitted by Coin.mx to be derived from the specifically charged criminal activity relating to ransomware schemes, or whether he intended by such transmission of funds to promote or support such unlawful activity, is for you to decide.]**

I instruct you that under federal law, it is illegal for a person to transmit in interstate or foreign commerce any communication containing any threat to cause damage to a computer connected to the Internet, with the intent to extort from another person any money or other thing of value. It is also illegal for any person to transmit any demand or request for money or other thing of value in relation to damage to a computer, where such damage was caused to facilitate the extortion.[8] [**ANTHONY MURGIO proposes the following additional language:** **No such**

---

[8]     *See* 18 U.S.C. § 1030(a)(7) ("Whoever . . . with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any—(A) threat to cause damage to a protected computer; . . . or (C) demand or

schemes or conduct are charged against ANTHONY MURGIO in this case.]  [The Government objects to this language as unnecessary.]

[The Government proposes the following language:  To be clear, the Government does not have to prove that ANTHONY MURGIO himself participated in extortion in furtherance of ransomware schemes.  Rather, the Government only has to prove that ANTHONY MURGIO knew that Coin.mx's business involved, to at least some degree, the transmission of funds that were derived from such criminal offense, or that were intended to promote or support this unlawful activity.]

[ANTHONY MURGIO proposes the following language instead:  To be clear, the Government does not have to prove that ANTHONY MURGIO himself participated in extortion in furtherance of ransomware schemes.  But the Government must prove that ANTHONY MURGIO knew that funds transmitted by Coin.mx were derived from ransomware schemes, or that in transmitting funds to help victims of ransomware schemes, ANTHONY MURGIO intended in so doing to promote or support  the unlawful activity of perpetrating ransomware schemes by others.  When you are considering these matters, consider carefully what it means to "derive from" "promote" or "support" as I have previously defined and explained these terms to you.]

---

request for money or other thing of value in relation to damage to a protected computer, where such damage was caused to facilitate the extortion" is guilty of a crime).

<u>Count Two, Third [Fourth] Element:</u>
<u>Operation</u>

If you find that Coin.mx was an unlicensed money transmitting business, in any of the

three ways I have discussed, you must next determine whether ANTHONY MURGIO

knowingly controlled, conducted, managed, supervised, directed, or owned all or part of

Coin.mx.  To prove that ANTHONY MURGIO knowingly controlled the money transmitting

business, the Government must establish that ANTHONY MURGIO was knowingly involved in

the management of the business and was not merely an employee or consultant of that business.

Conduct is knowing when it is done voluntarily and intentionally and not because of accident,

mistake, or some other innocent reason.

Count Two, Fourth [Fifth] Element:
Interstate or Foreign Commerce

The fourth element the Government must establish beyond a reasonable doubt is that the operation of Coin.mx affected interstate or foreign commerce.  Interstate or foreign commerce simply means the movement of goods, services, money or individuals between states or between the United States and a foreign country.  Any effect on interstate or foreign commerce is sufficient to satisfy this element, no matter how minimal.

<u>Count Two: Unanimity as to Basis for Conviction</u>

As I have explained, Count Two alleges that ANTHONY MURGIO operated an unlicensed money transmitting business in three different ways:  first, by operating Coin.mx without complying with Florida state licensing requirements; second, by operating Coin.mx without complying with federal registration requirements; and third, by allowing funds to be transmitted through Coin.mx that he knew were derived from a criminal offense or intended to be used to promote or support unlawful activity.

You may find ANTHONY MURGIO guilty on Count Two based upon any of these three theories if you find that all of the corresponding elements have been met.  It is not necessary for you to find that all three theories are true in order for you to convict.  However, you must unanimously agree on any one basis for conviction.  That is, you may only find ANTHONY MURGIO guilty on the basis that he operated Coin.mx without complying with Florida state licensing requirements if all of you *unanimously* find that all of the elements of that conduct have been proven beyond a reasonable doubt.  Likewise, you many only find ANTHONY MURGIO guilty on the basis that he operated Coin.mx without complying with federal registration requirements if all of you *unanimously* find that all of the elements of that conduct have been proven beyond a reasonable doubt.  And similarly, you may only find ANTHONY MURGIO guilty on the basis that he allowed funds to be transmitted through Coin.mx that he knew to be derived from the designated ransomware criminal offense or intended to be used to promote or support that particular unlawful activity if all of you *unanimously* find that all of the elements of *that* conduct have been proven beyond a reasonable doubt.

<u>Count One: Conspiracy to Operate an Unlicensed Money Transmitting Business</u>

Now that I have finished explaining Count Two, let me turn to Count One, which charges ANTHONY MURGIO with *conspiring* to operate an unlicensed money transmitting business. In other words, Count One charges that ANTHONY MURGIO agreed with others to commit the offense I just described in explaining Count Two.  In order to find ANTHONY MURGIO guilty on this count, you must find that the Government has proven the following beyond a reasonable doubt:

<u>First</u>, that there was an agreement between two or more persons to operate an unlicensed money transmitting business;

<u>Second</u>, that ANTHONY MURGIO intentionally and knowingly participated as a member of that conspiracy; and

<u>Third</u>, that any one of the conspirators knowingly committed at least one overt act in furtherance of the conspiracy.

I will now discuss each of these elements in more detail.

Count One, First Element:
Existence of the Conspiracy

How do you determine whether a conspiracy "existed"?  Simply defined, a conspiracy is an agreement between two or more persons to violate the law.  To establish the existence of a conspiracy, however, the Government is not required to show that two or more people sat around a table and entered into a formal contract.  It is sufficient if two or more persons, in any manner, come to a common understanding to violate the law.  They need not explicitly say what they agree to do or use any other explicit language to indicate their agreement.  In determining whether they have agreed to commit a crime, you may look at all of their conduct and determine whether it reflects an intent to carry out a common criminal purpose.  The old saying "actions speak louder than words" applies here.  If, upon consideration of all the evidence, direct and circumstantial, you find that the Government has proven beyond a reasonable doubt that there was a meeting of the minds or agreement between two or more persons to operate an unlicensed money transmitting business as alleged in Count Two, then proof of the existence of the conspiracy is established.  Mere discussions about crimes or mere knowledge of crimes without an agreement to commit them is not a conspiracy.

It is not necessary that the members of a conspiracy actually succeed in carrying out their criminal scheme for you to conclude that the conspiracy existed.  Even if it should fail in its purpose, a conspiracy is still a crime.  It is the agreement itself—the agreement between two or more persons to commit a crime—that the law forbids and defines as a separate criminal offense.

Count One, Second Element:
Participation in the Conspiracy

If you find the Government has proven beyond a reasonable doubt that the conspiracy alleged in Count One existed, you must then determine whether the Government has proven beyond a reasonable doubt that ANTHONY MURGIO intentionally and knowingly was a member of the conspiracy.

A person acts "intentionally" and "knowingly" if he acts purposely and deliberately and not because of mistake or accident, mere negligence, or other innocent reason. That is, the acts must be the product of the person's conscious objective. Engaging in acts that happen to further the purpose of the conspiracy, without knowing or intending to further the illegal goal of the conspiracy, is not sufficient to make someone a member of a conspiracy.

The extent of ANTHONY MURGIO's participation in the conspiracy is irrelevant. It does not matter whether his role in the conspiracy may have been more limited than or different in nature from the roles of his co-conspirators. However, the Government must prove that ANTHONY MURGIO knowingly and intentionally participated as a member of the conspiracy while being aware of and intending to further its illegal purpose.

I want to caution you, however, that a defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of a conspiracy, even coupled with awareness that those other people are acting unlawfully, does not make a defendant a member of the conspiracy. Knowledge of or acquiescence in a conspiracy, without participation, is not sufficient. More is required under the law. What is necessary is that the defendant understood the purpose of the conspiracy and acted with the intention of helping to accomplish that unlawful end.

Count One, Third Element:
Overt Act

Let me know turn to the third element of the conspiracy alleged in Count One, the requirement of an overt act.

Count One requires the Government to prove beyond a reasonable doubt that at least one co-conspirator committed at least one overt act in furtherance of the conspiracy. The overt act element requires the Government to show something more than mere agreement; it must show that some overt step or action was taken by at least one of the conspirators in furtherance of the conspiracy. In other words, the Government must show that the agreement went beyond the mere talking stage. It must show that at least one of the conspirators actually did something in furtherance of the conspiracy.

In order for the Government to satisfy the overt act requirement, it is not necessary for the Government to prove any particular overt acts. Nor does the Government have to prove that it was ANTHONY MURGIO who committed the overt act. It is sufficient for the Government to show that one of the members of the conspiracy knowingly committed some overt act in furtherance of the conspiracy. The overt act need not even be one that is alleged in the Indictment. Rather it can be any overt act, whether alleged in the Indictment or not, if you are convinced beyond a reasonable doubt that the act occurred while the conspiracy was still in existence and was done in furtherance of the conspiracy. In addition, you need not be unanimous as to which overt act you find to have been committed. It is sufficient as long as all of you find that at least one overt act was committed by one of the conspirators in furtherance of the conspiracy.

<u>Count One: Liability for Acts and Declarations of Co-Conspirators</u>

I now want to talk with you about your ability to consider the acts and statements of co-conspirators in evaluating the evidence against ANTHONY MURGIO with respect to Count One.

When people enter into a conspiracy, each and every member of the conspiracy becomes an agent for the others in carrying out the conspiracy. Accordingly, any reasonably foreseeable act, statement, or omission by any member of the conspiracy, undertaken in furtherance of the conspiracy, is deemed, under the law, to be attributable all of the other members of the conspiracy, and all of the members are responsible for such acts, statements and omissions.

If you find beyond a reasonable doubt that ANTHONY MURGIO was a member of the conspiracy charged in Count One, then any acts, statements, or omissions by other persons you find were part of the conspiracy may be considered against him, to the extent that those acts, statements, or omissions were done in furtherance of the conspiracy. This is so even if such acts, statements, or omissions occurred in ANTHONY MURGIO's absence and without his knowledge.

However, before you may consider the statements or acts of a co-conspirator in deciding the issue of ANTHONY MURGIO's guilt on Count One, you must first determine that the acts and statements were made during the existence, and in furtherance, of the conspiracy. If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy or if they were not done or said in furtherance of the conspiracy, they may not be considered by you as evidence against ANTHONY MURGIO.

Counts Three and Four:  Overview

Let me next turn to Counts Three and Four of the Indictment.  Count Three alleges that ANTHONY MURGIO, MICHAEL MURGIO, and YURI LEBEDEV conspired to make corrupt payments to the defendant, TREVON GROSS, who was the Chairman and Chief Executive Officer of HOPE Federal Credit Union, with the intent to influence him in the business of a financial institution.  Count Four alleges that ANTHONY MURGIO, MICHAEL MURGIO, and YURI LEBEDEV made or offered to make corrupt payments to TREVON GROSS with the intent to influence him in connection with the business of HOPE Federal Credit Union.  To be clear, TREVON GROSS is not charged in Count Three or Four.

I have already explained the elements of conspiracy when I discussed Count One, and you should follow those same instructions with respect to Count Three.  I will now turn to Count Four.

Count Four:  Making Corrupt Payments to an Officer of a Financial Institution

Count Four charges ANTHONY MURGIO, MICHAEL MURGIO, and YURI LEBEDEV with making or offering to make corrupt payments to an officer of a financial institution, specifically the defendant TREVON GROSS, with the intent to influence him in connection with the business of a financial institution.   In order to find the charged defendants guilty of this crime, the Government must prove the following elements beyond a reasonable doubt:

First, that the defendant you are considering gave or agreed to give or offered or promised something of value to TREVON GROSS;

Second, that TREVON GROSS was an officer or director or employee of a financial institution as that term is defined under federal law;

Third, that the defendant you are considering acted corruptly and with the intent to influence or reward TREVON GROSS's decision in connection with any business or transaction of HOPE Federal Credit Union; and

Fourth, that the thing of value paid by the defendants had a value greater than $1,000.

Count Four, First Element: Giving Something of Value

The first element the Government must prove beyond a reasonable doubt is that, with respect to the particular defendant you are considering, the defendant gave or agreed to give or offered or promised something of value to TREVON GROSS as alleged in the Indictment.

The law makes no distinction between offering, promising, or actually giving a bribe. The mere offer or promise of a bribe is just as much a violation of the statute as the actual giving of one.

It is not necessary that the Government prove that the payment was made directly to TREVON GROSS.  If the payment was made corruptly, or was offered or promised to be made corruptly, to a third party, such as another person or entity, with intent to influence or reward TREVON GROSS, that is sufficient to satisfy this element.

Count Four, Second Element:
Recipient Was an Officer of a Financial Institution


The second element the Government must prove beyond a reasonable doubt is that

TREVON GROSS was an officer or director or employee of a financial institution.  In order to

satisfy this element, the Government must prove that HOPE Federal Credit Union was a credit

union with accounts insured by the National Credit Union Share Insurance Fund[9], and that

TREVON GROSS was an officer or director or employee of HOPE Federal Credit Union.

---

[9]     *See* 18 U.S.C. § 20(2) (defining "financial institution" to include "a credit union with
accounts insured by the National Credit Union Share Insurance Fund").

<u>Count Four, Third Element:</u>
<u>Corrupt Intent to Influence Business of the Financial Institution</u>

The third element the Government must prove beyond a reasonable doubt is not just that

ANTHONY MURGIO, MICHAEL MURGIO, or YURI LEBEDEV gave or agreed to give or

offered or promised something of value to TREVON GROSS, but that the particular defendant

you are considering did so knowingly and corruptly and with intent to influence or reward

TREVON GROSS in connection with any business or transaction of HOPE Federal Credit

Union.

To act corruptly means  to act voluntarily and deliberately with the bad  purpose of

accomplishing either an unlawful end or result, or a lawful end or result by some unlawful

method or means, **[The Government proposes that this sentence continue as follows:  in this**

**case, to improperly influence or reward TREVON GROSS in connection with any business**

**or transaction of HOPE Federal Credit Union.**] [10] **[TREVON GROSS objects to this**

**additional language proposed by the Government].**  This involves conscious wrongdoing, or

as it sometimes been expressed, a bad or evil state of mind.  **[The Government proposes that**

**this charge continue as follows: The motive to act corruptly is ordinarily a hope or**

**expectation of either financial gain or some other benefit to oneself or some profit or**

**benefit to another.**[11]] **[The defendants object to this language because the "ordinary"**

---

[10]     *See United States* v. *McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990); *United States v. Murgio*, No. 15-cr-769 (AJN), Slip Op. (S.D.N.Y. Sept. 19, 2016).

[11]     *See United States* v. *McElroy*, 910 F.2d 1016, 1021 (2d Cir. 1990); *accord Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V.* v. *Schreiber*, 327 F.3d 173, 182 (2d Cir. 2003) ("We have also, in the context of the federal statute criminalizing the bribing of agents of financial institutions, approved jury instructions providing that a person acts 'corruptly' if he or she acts with a 'bad purpose.'" (quoting *McElroy*, 910 F.2d at 1026) (footnote omitted)).[12]     *See United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006) (reversing bribery conviction under 18 US.C. § 666(a)(1)(B), which contains language similar to 18 U.S.C. § 215, because jury instructions did not make clear that it was the defendant's

**motive to act corruptly is irrelevant to this case; it is only the motives of the defendants on trial that is relevant.]**

Remember that with respect to each defendant that you are considering, it is each defendant's intent to corruptly influence TREVON GROSS's actions that is important, and not the intent of TREVON GROSS or  the subsequent actions of TREVON GROSS or HOPE Federal Credit Union.

In order to find either ANTHONY MURGIO, MICHAEL MURGIO, or YURI LEBEDEV guilty, the Government does not have to prove that TREVON GROSS had a corrupt intent, corruptly accepted any payment, or that a payment corruptly influenced any business or transaction of HOPE Federal Credit Union.  Nor is it necessary for the Government to prove that TREVON GROSS had the authority to perform the act which a particular defendant allegedly corruptly sought for him to undertake.  Also, if you find that a particular defendant acted with the intent to reward TREVON GROSS for a decision already made, it does not matter that the payment was not made or offered until after the decision was made.

---

intention in accepting the payment that was the relevant inquiry, not that of the person offering the payment).

Count Four, Fourth Element:
Value Greater Than $1,000

The fourth element the Government must prove beyond a reasonable doubt is that the thing of value given or agreed to or offered or promised by the particular defendant you are considering had a value greater than $1,000.  The Government need not prove the exact value of the thing of value as long as there is proof beyond a reasonable doubt that the value exceeded $1,000.

<u>Count Five:  Accepting Corrupt Payments as an Officer of a Financial Institution</u>

Count Five of the Indictment charges TREVON GROSS with corruptly soliciting, demanding for the benefit of any person, accepting, and agreeing to accept payments as an officer of a financial institution with intent to be influenced and rewarded.   In order to find TREVON GROSS guilty of this crime, the Government must prove the following elements beyond a reasonable doubt:

<u>First</u>, that TREVON GROSS was an officer or director or employee of a financial institution;

<u>Second</u>, that TREVON GROSS solicited, demanded, accepted, or agreed to accept something of value, either for his own benefit or the benefit of another;

<u>Third</u>, that TREVON GROSS did so knowingly and corruptly, and with the intent to be influenced or rewarded in connection with any business or transaction of HOPE Federal Credit Union; and

<u>Fourth</u>, that the thing of value solicited, demanded, accepted or agreed to accept, had a value greater than $1,000.

I have already instructed you on the meaning of these elements in discussing Count Four, and you should follow those instructions with respect to this Count.

With respect to the third element – corrupt intent – remember that to act corruptly means to act voluntarily and deliberately with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.  Here, it is TREVON GROSS's intent in accepting the payments that is the relevant question, <u>not</u> the intent of the person or persons offering or making the payments.[12]  Even if you find that defendants

---

[12]   *See United States v. Ford*, 435 F.3d 204, 214 (2d Cir. 2006) (reversing bribery conviction under 18 US.C. § 666(a)(1)(B), which contains language similar to 18 U.S.C. § 215, because jury

ANTHONY MURGIO, MICHAEL MURGIO, or YURI LEBEDEV acted with a corrupt intent, you may not find TREVON GROSS guilty unless you find that he also acted with a corrupt intent.

Remember that it is TREVON GROSS's intent to be influenced or rewarded that matters, not the subsequent actions he undertook concerning HOPE Federal Credit Union or the subsequent actions of HOPE Federal Credit Union.  In order to find TREVON GROSS guilty, the Government does not have to prove that the payment or offer of payment actually influenced any of TREVON GROSS's decisions concerning HOPE Federal Credit Union.  Also, if you find that TREVON GROSS acted with the intent to be rewarded for a decision already made, it does not matter that the payment was not made or offered until after the decision was made.

Also remember that in order to find TREVON GROSS guilty, the Government does not have to prove that TREVON GROSS received the payments directly.  If TREVON GROSS corruptly solicited, demanded, accepted, or agreed to accept a payment on behalf of another person or entity with the intent to be influenced or rewarded, that is sufficient to find him guilty.

---

instructions did not make clear that it was the defendant's intention in accepting the payment that was the relevant inquiry, not that of the person offering the payment).

<u>Counts Three Through Five:  Bona Fide Payments</u>

The corrupt payment statute charged in Counts Three, Four, and Five does not criminalize legitimate commercial and business practices.[13]  It only applies to payments made with a corrupt intent.  The statute does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.[14]   Bona fide means in good faith or without deceit or fraud.[15]  If you find that any of the defendants made or accepted, or offered to make or accept, bona fide payments without corrupt intent, you must find that defendant not guilty.

---

[13]    *See United States v. Walsh*, No. 15-CR-91 (ADS), 2016 WL 211916, at *12 (E.D.N.Y. Jan. 15, 2016) ("the legislative history of the 1986 amendment to Section 215 indicates that Congress broadened the [bona fide payments] exemption to make clear that the statute did not proscribe legitimate business practices."); *United States v. Rooney*, 37 F.3d 847, 852 (2d Cir. 1994) (analyzing the 1986 amendments to 18 U.S.C. § 666, which parallels the 1986 amendments to 18 U.S.C. § 215, and concluding that the clear purpose of the amendments was "to avoid § 666's possible application to acceptable commercial and business practices.").

[14]    *See* 18 U.S.C. § 215(c).

[15]    *See United States* v. *Schwimmer*, 924 F.2d 443, 448 (2d Cir. 1991).

Counts Six and Eight:
Conspiracy to Commit Wire Fraud and Conspiracy to Commit Money Laundering

Counts Six and Eight allege that ANTHONY MURGIO conspired to commit wire fraud and money laundering, respectively.  I have already explained the elements of conspiracy when I discussed Counts One and Three, and you should follow those instructions with respect to the conspiracies charged in Counts Six and Eight, with one exception.  Unlike the conspiracies charged in Counts One and Three, you do *not* have to find that any overt act was committed by any conspirator in furtherance of the conspiracies charged in Counts Six and Eight in order to find ANTHONY MURGIO guilty on those counts.  In other words, the law does not require the Government to prove that any overt act was committed in order to prove a conspiracy to commit wire fraud or money laundering.

Let me now explain the elements of the substantive crimes of wire fraud and money laundering, which are the objects of the conspiracies charged in Counts Six and Eight.

<u>Count Seven:  Wire Fraud</u>

Count Seven charges ANTHONY MURGIO with wire fraud.  In order to find ANTHONY MURGIO guilty of this crime, the Government must prove the following elements beyond a reasonable doubt:

<u>First:</u>  That there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises;

<u>Second:</u>  That ANTHONY MURGIO knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

<u>Third:</u>  That in execution of the scheme, ANTHONY MURGIO used or caused the use of interstate or international wires.

Count Seven, First Element:
Scheme or Artifice to Defraud

The first element the Government must prove beyond a reasonable doubt is the existence of a scheme or artifice to defraud others of money or property by means of false or fraudulent pretenses, representations, or promises.  I will now define some of these terms for you.

A "scheme or artifice" is simply a plan that is designed to accomplish an objective.

"Fraud" is a broad term.  It includes all the possible means by which a person seeks to gain some unfair advantage over another by false representations, false suggestion, false pretenses, or concealment of the truth.

So a "scheme to defraud" is any plan or course of action to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises.  It is a plan to deprive another of money or property by trick, deceit, or swindle.   Here, the Government alleges that the scheme to defraud was carried out by making false and fraudulent statements and representations to financial institutions.  **[ANTHONY MURGIO believes the charge should list the financial institutions that were allegedly defrauded.]**  **[The Government objects to listing the specific financial institutions at this time.]**

A statement or representation is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was false and the defendant made it with the intent to deceive.

It is not sufficient for the Government to show that even knowingly false statements and representations made by a party constitute a criminal fraud on another unless such knowingly false statements and misrepresentations are material to the bargain being struck between the parties.  Stated another way, a false or fraudulent representation or concealment in a wire fraud scheme must relate to a material fact or matter.

75

A material fact is one you would expect to be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision.  This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person would have considered important in making his or her decision.

Here the Government alleges a scheme to defraud that involved false and fraudulent statements and representations made to **[names of specific financial institutions]**.  **[The Government objects to listing the specific financial institutions at this time.]**

To find an untruthful statement or representation material, you must conclude that the statement or representation was one that was capable of influencing the decision-maker to whom it was directed—here, a financial institution—and was intended by the defendant to influence the financial institution's decision.  It does not matter whether the financial institution actually relied on the misrepresentation.  However, the misrepresentation had to be capable of influencing the financial institution, and intended by the defendant to influence the financial institution, whether it influenced the financial institution or not.

The Government is not required to establish that anyone actually relied on any false or fraudulent statement or representation.  Rather the statement or representation merely had to be capable of influencing the financial institution; whether the financial institution was actually influenced or not is of no moment.

In order to establish a scheme to defraud, the Government must also prove that the alleged scheme contemplated depriving the financial institution of money or property.   In this regard, a person is not deprived of money or property only when someone directly takes money

or property from that person, although that is obviously one way that a person or entity can be so deprived.

**[The Government proposes the following language:  A person can also be deprived of money or property when that person is provided false or fraudulent information that, if believed, would prevent the person from being able to make informed economic decisions about what to do with his or her money or property.  In other words, a person is deprived of money or property when the person is deprived of the right to control that money or property.]**

**[ANTHONY MURGIO proposes the following language instead:  A person can also be deprived of money or property when that person is deprived of the right to control that money or property.]**

Because the Government need only show that a scheme to defraud existed, not that it succeeded, it is not necessary for the Government to prove that the financial institutions actually lost money or property as a result of the scheme.  For you to find ANTHONY MURGIO guilty, however, the Government must prove that such a loss was contemplated by the defendant.   That is, to carry its burden, the Government must prove that ANTHONY MURGIO contemplated and intended doing harm to a victim; that he intended to do something more than merely deceive the financial institutions.

In considering whether contemplation of the required loss was proved by the Government, keep in mind that the loss of the right to control money or property constitutes deprivation of money or property only when the scheme, if it were to succeed, would result in economic harm to the victim.  If all the Government proves is that under the scheme, the financial institutions entered into transactions they would otherwise not have entered into,

without proving that the financial institutions would thereby have suffered economic harm, then the Government will not have met its burden of proof.[16]

A scheme to defraud need not be shown by direct evidence, but may be established by all the circumstances and facts in the case.

Finally, it does not matter whether the financial institutions might have discovered the fraud had they probed further. If you find that a scheme existed, it is irrelevant whether you believe that the victim was careless, gullible, or even negligent.

If you find that the Government has sustained its burden of proof that a scheme to defraud did exist, as charged, you next should consider the second element.

---

[16]     *See* Hon. Colleen McMahon, Jury Charge in *United States* v. *Binday*, 12 Cr. 152 (CM) (S.D.N.Y. 2013), *aff'd*, 804 F.3d 558 (2d Cir. 2015) (affirming the following charge: "What does that mean, deprive someone of money or property? Well, obviously a person is deprived of money or property when someone else takes his money or property away from him. But a person can also be deprived of money or property when he is deprived of the ability to make an informed economic decision about what to do with his money or property. We referred to that as being deprived of the right to control money or property. Because the government need only show that a scheme to defraud existed, not that it succeeded, it is not necessary for the government to prove that any insurance company actually lost money or property as a result of the scheme. Such a loss must, however, have been contemplated by the defendant. In considering whether loss was contemplated, keep in mind that the loss of the right to control money or property constitutes deprivation of money or property only when the scheme, if it were to succeed, would result in economic harm to the victim. Economic harm is not limited to a loss on the company's bottom line."); *accord* Hon. Loretta A. Preska, Jury Charge in *United States* v. *Davis*, 13 Cr. 923 (LAP) (S.D.N.Y. 2016).

<u>Count Seven, Second Element:</u>
<u>Knowledge and Intent to Defraud</u>

The second element that the Government must prove beyond a reasonable doubt is that ANTHONY MURGIO participated in a scheme to defraud knowingly, willfully, and with specific intent to defraud.

To participate in a scheme means to engage in it, by taking some affirmative step to help it succeed.

"Knowingly" means to act voluntarily and deliberately, rather than inadvertently or by mistake.

"Willfully" means to act knowingly and purposefully, with an intent to do something the law forbids; that is to say, with bad purpose, either to disobey or disregard the law.

To act with "intent to defraud" means to act knowingly and with the specific purpose of causing some financial harm or deprivation of property to others.  The Government need not prove that any intended victim was actually harmed; only that such harm was contemplated.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question.  This question involves one's state of mind.

Science has not yet invented a way for us to look inside someone's head to see what he is thinking and intending and knowing.  Direct proof of knowledge, willfulness, and fraudulent intent is almost never available.  Rarely is it the case that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, words,

conduct, and acts, taken in light of all the surrounding circumstances that are disclosed by the evidence, together with the rational or logical inferences that may be drawn therefrom.

What is referred to as drawing inferences from circumstantial evidence is no different from what people normally mean when they say, "use your common sense." Using your common sense means that, when you come to decide whether the defendant possessed or lacked an intent to defraud, you need not limit yourself to just what the defendant said, but you may also look at what the defendant did and what others did in relation to the defendant and, in general, everything that occurred.

Circumstantial evidence, if believed, is of no less value that direct evidence. In either case, the essential elements of the crime must be proven beyond reasonable doubt.

In order to sustain the charges against ANTHONY MURGIO, the Government must prove beyond a reasonable doubt that the defendant participated in the alleged scheme with an understanding of its fraudulent or deceptive character and with the intent to help it succeed.

**[The Government requests the following additional language:  That said, there are certain things that the Government need not prove in order to meet its burden.  It need not prove that the defendant participated in or even knew about all of the operations of the scheme.  It need not prove that the defendant originated or invented the scheme, or participated in it from its inception.  A person who begins to participate in a scheme after it begins is just as guilty as a person who participates from the beginning, as long as the person who joins at a later point becomes aware of the scheme's general purpose and operation and acts intentionally to further its unlawful goal or goals.   Finally, the Government need not prove that the defendant participated in the scheme to the same degree as other participants.]**

[**ANTHONY MURGIO requests the following additional language instead:**  Thus, in order to sustain wire fraud charges against the defendant, the government must establish beyond a reasonable doubt that he knew that his conduct as a participant in the matter at issue was calculated to deceive, and, nonetheless, associated himself with the allegedly fraudulent scheme for the specific purpose of causing harm or some loss to another.

To conclude this element, if you find that the defendant was not a knowing participant in the scheme, or that he lacked the specific intent to defraud as I have explained it here, you should find him not guilty. On the other hand, if you find that the government has established beyond a reasonable doubt not only the first element, namely the existence of the scheme to defraud, but also this second element, that the defendant was a knowing participant and acted with specific intent to defraud, and if the government also establishes the third element, as to which I am about to instruct you, then you have a sufficient basis on which to convict the defendant of this charge.]

Count Seven, Third Element:
Use of Interstate Wires

The third element the Government must prove beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud.  The wire communication must pass between two or more states as, for example, an email sent from New York to Florida, or it must pass between the United States and a foreign country, for example, a telephone call between New York and London.  A wire communication also includes a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country.

 The use of the wires need not itself be a fraudulent representation.  It must, however, further or assist in the carrying out of the scheme to defraud.  It is not necessary for ANTHONY MURGIO to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which ANTHONY MURGIO is accused of participating.

In this regard, it is sufficient to establish this element of the crime if you find that ANTHONY MURGIO caused the wires to be used by others.  This does not mean that ANTHONY MURGIO must specifically have authorized others to make the telephone call, send the email, or transfer the funds.  When one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires can reasonably be foreseen, even though not actually intended, then a person "causes" the wires to be used.

Count Nine: Money Laundering

Count Nine alleges that ANTHONY MURGIO committed money laundering, specifically, the unlawful transportation of funds or monetary instruments with the intent to promote the carrying on of specified unlawful activity.  In order to find ANTHONY MURGIO guilty on this count, you must find the Government has proven the following elements beyond a reasonable doubt:

First, that ANTHONY MURGIO transported, transmitted, or transferred, or attempted to transport, transmit, or transfer, a monetary instrument or funds from a place in the United States to or through a place outside of the United States, or to a place in the United States from or through a place outside the United States; and

Second, ANTHONY MURGIO did so with the intent to promote the carrying on of specified unlawful activity, which I will explain to you in a moment.

<u>Count Nine, First Element:</u>
<u>Transportation of a Monetary Instrument or Funds to or from the United States</u>

The first element that the Government must prove beyond a reasonable doubt is that

ANTHONY MURGIO transported, transmitted, or transferred, or attempted to transport,

transmit, or transfer, a monetary instrument or funds from a place in the United States to or

through a place outside of the United States, or to a place in the United States from or through a

place outside the United States.

The term "monetary instrument" includes the coin or currency of the United States or of

any other country, travelers' checks, personal checks, bank checks, and money orders.  I

previously defined the word "funds" in discussing Count Two and you should apply the same

definition here.

Count Nine, Second Element:
Intent to Promote Specified Unlawful Activity

The second element that the Government must prove beyond a reasonable doubt is that ANTHONY MURGIO acted with intent to promote the carrying on of specified unlawful activity, namely the operation of Coin.mx as an unlicensed money transmitting business.  To act intentionally means to act deliberately and purposefully, not by mistake or accident, with the purpose of promoting, facilitating or assisting the carrying on of an unlicensed money transmitting business.  If you find that ANTHONY MURGIO acted with the intention or deliberate purpose of promoting, facilitating, or assisting in the carrying on of the operation of an unlicensed money transmitting business, then this element is satisfied.

## OTHER INSTRUCTIONS

### Conscious Avoidance

[**The defendants object to a Conscious Avoidance charge in this case.  The Government believes such a charge is warranted based on the anticipated evidence to be adduced at trial.  The Government respectfully requests that the Court defer ruling on the requested charge until the close of evidence.**]

This concludes my instructions on the crimes charged in the Indictment, but before I move onto my remaining instructions, I want to now instruct you on the concept of conscious avoidance.

I instructed you earlier that in order to find the defendants guilty on the counts in which they are charged, you must find that they acted knowingly in various respects.  In determining whether a particular defendant acted knowingly, you may consider whether that defendant deliberately closed his eyes to what otherwise would have been obvious to him.  That is what the phrase "conscious avoidance" refers to.

As I told you before, acts done knowingly must be a product of a person's conscious intention.  They cannot be the result of carelessness, negligence, or foolishness.  But a person may not intentionally remain ignorant of a fact that is material and important to his conduct in order to escape the consequences of criminal law.  We refer to this notion of intentionally blinding yourself to what is staring you in the face as conscious avoidance.

An argument by the Government of conscious avoidance is not a substitute for proof; it is simply another factor that you, the jury, may consider in deciding what a defendant knew.  Thus, if you find beyond a reasonable doubt that a particular defendant was aware that there was a high probability that a fact was so, but that the defendant deliberately avoided confirming this fact, such as by purposely closing his eyes to it or intentionally failing to investigate it, then you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.

With respect to the conspiracy counts, you must also keep in mind that there is an important difference between intentionally participating in the conspiracy, on the one hand, and knowing the specific object of the conspiracy, on the other. You may consider conscious avoidance in deciding whether a defendant knew the objective of a conspiracy, that is, whether a defendant reasonably believed that there was a high probability that a goal of the conspiracy was to commit the crime charged as the object of that conspiracy and deliberately avoided confirming that fact, but participated in the conspiracy anyway. But conscious avoidance cannot be used as a substitute for finding that a defendant intentionally joined the conspiracy in the first place. It is logically impossible for a defendant to intend and agree to join a conspiracy if he does not actually know it exists, and that is the distinction I am drawing.

In sum, if you find that a particular defendant believed there was a high probability that a fact was so and that the defendant deliberately and consciously avoided learning the truth of that fact, you may find that the defendant acted knowingly with respect to that fact. However, if you find that the defendant actually believed the fact was not so, then you may not find that he acted knowingly with respect to that fact.

<u>Aiding and Abetting</u>

In connection with the substantive crimes charged in Counts Two, Four, Seven, and Nine, the defendants are charged with committing certain criminal acts and also with aiding and abetting the commission of those acts.  As to each of those counts, a particular defendant can be convicted <u>either</u> if he committed the crime himself <u>or</u> if the Government proves beyond a reasonable doubt that he aided and abetted the commission of the crime by one or more other persons.  Thus, it is not always necessary for the Government to show that a defendant himself physically committed a crime in order for you to find him guilty.  If you do not find beyond a reasonable doubt that the defendant physically committed a crime, you may, under certain circumstances, still find him guilty of the crime if the Government has proved he was an aider and abettor.

A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.  Therefore, if you find that the Government has proven beyond a reasonable doubt that another person actually committed a crime, and proved that the defendant you are considering aided and abetted that person in the commission of the offense, then you may find that defendant guilty of that crime.

In order to convict on an aiding and abetting theory, you must first find that another person has committed the crime charged.  Obviously, no one can be convicted of aiding and abetting the criminal act of another if no crime was actually committed by the other person.  But if you do find that a crime was committed, then you must consider whether the Government has proved that a particular defendant you are considering aided or abetted the commission of that crime.

In order to aid and abet another to commit a crime, it is necessary that the Government prove that the defendant you are considering willfully and knowingly associated himself in some

way with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed.  However, the intent necessary to support a conviction for aiding and abetting goes beyond mere knowledge by a defendant that his action would tend to advance some nefarious purpose of the principal.  Rather, the defendant must act with the specific intent of facilitating or advancing the principal's commission of the underlying crime.

To determine whether a defendant aided and abetted the commission of the crime with which he is charged, the Government must prove that the defendant you are considering: (1) participated in the crime charged as something he wished to bring about; (2) associated himself with the criminal venture knowingly, deliberately, and willfully; and (3) intended by his actions to make the criminal venture succeed.  If the Government has proved these three things beyond a reasonable doubt, then that defendant is an aider and abettor and guilty of the crime charged.  If the Government's proof has failed to prove these three things, then that defendant is not an aider and abettor and you must find him not guilty of the crime charged.

Venue

In addition to all the elements I have described for you with respect to Counts One through Nine of the Indictment, you must also decide whether any part of the offense reached within this District: the Southern District of New York.  The Southern District of New York consists of the following counties:  Manhattan, the Bronx, Westchester, Dutchess, Putnam, Rockland, Orange, and Sullivan.  The Southern District of New York also includes the waters within the Eastern District of New York, including the East River and the waters between Staten Island and Long Island.  This is called "venue."  Venue means place or location.

Venue must be examined separately for each count in the Indictment.  Venue on one count does not establish venue on another count.

The Government need not prove that any crime was completed in this District or that the defendants or any of their co-conspirators were physically present here.  Rather, venue is proper in this District if the defendants, or for the conspiracy counts, any of the defendants or their co-conspirators, caused any event to occur in this District in furtherance of the offense.

The defendants need not have specifically intended to cause something to happen in this District, or even known that they were causing something to happen here.  As long as it was reasonably foreseeable to the defendants that their conduct, or the conduct of anyone with whom they conspired, would cause something to happen in this District in furtherance of the crime, that is sufficient.

Among other things, venue can be established if the defendants or their co-conspirators caused any communications to be transmitted to or from this District that were in furtherance of the offense.  Such communications can include the transmission of the contents of a website to the Southern District of New York, where the operation of the website was in furtherance of the offense and where it was reasonably foreseeable to the defendant that the website could be

90

accessed by someone in the Southern District of New York.  Such communications can also include the transmission of emails to or from this District in furtherance of any of the offenses, when any of the defendants were in the District at the time they sent or received the e-mails, or when any of the defendants were sending e-mails to people they knew to be in the District.

On the issue of venue—and this alone—the Government need not prove venue beyond a reasonable doubt, but only by a mere preponderance of the evidence.  A "preponderance of the evidence" means more likely than not.  Thus, the Government has satisfied its burden of proof as to venue if you conclude that it is more likely than not that some act or communication in furtherance of each charged offense occurred in the Southern District of New York.  If, on the other hand, you find that the Government has failed to prove the venue requirement as to a particular offense, then you must acquit the defendant of that offense, even if all other elements of an offense are proven.

**[TREVON GROSS objects to the Government's proposed venue charge in its entirety on the grounds that it improperly conflates the venue requirements for the conspiracy charges and the substantive counts.  TREVON GROSS requests a separate venue charge be given for Count Five and proposes the following language:**

**In addition to the elements I have described to you for Count Five against TREVON GROSS, the Government must also establish by a preponderance of the evidence that venue for Count Five is proper in the Southern District of New York.  Venue means place or location.  The Southern District of New York consists of the following counties: Manhattan, the Bronx, Westchester, Dutchess, Putnam, Rockland, Orange, and Sullivan.**

Venue is proper in a district where an offense is committed.[17]  Venue must be examined separately for each count in the Indictment.  Venue on one count does not establish venue on another count. The Government must prove that venue is proper by a preponderance of the evidence.  A "preponderance of the evidence" means more likely than not.

In deciding whether venue is proper here in the Southern District of New York for Count Five against TREVON GROSS, you must consider factors such as the location of Mr. Gross's alleged acts and the location where his acts allegedly had an effect.[18]  Specifically, you must look at whether TREVON GROSS corruptly solicited or demanded anything of value or corruptly accepted or agreed to accept anything of value here in the Southern District of New York and not some other place.  Venue is only proper where these essential acts took place.[19]

If you find that the government has not proven that the essential elements of the offense took place in the Southern District of New York by a preponderance of the evidence, you must acquit TREVON GROSS, even if all other elements of the offense are proven.]

[The Government objects to a separate venue charge for Count Five and to the additional language proposed by TREVON GROSS because it is unnecessary and potentially confusing to the jury.  The Government's proposed venue charge conforms with that suggested by Sand's Modern Federal Jury Instruction No. 3-11]

---

[17] Fed. R. Crim. P. 18.

[18] *See United States v. Beech-Nut Nutrition Corp*., 871 F.2d 1181, 1188-89 (2d Cir. 1989).

[19] *See United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005).

<u>Variance in Dates</u>

The Indictment alleges that certain conduct occurred on or about various dates or during various time periods.  It is not necessary, however, for the Government to prove that any conduct alleged occurred exactly on such dates or throughout any such time periods.  As long as the conduct occurred around any dates or within any time periods the Indictment alleges it occurred, that is sufficient.

<u>Punishment</u>

The question of possible punishment of the defendant is of no concern to you, the members of the jury, and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon the Court.

Your function is to weigh the evidence in the case and to determine whether or not the Government has proved that the defendants are guilty beyond a reasonable doubt, solely upon the basis of such evidence.

<u>Juror Note-Taking</u>

For those of you who took notes during the course of the trial, you should not show your notes to or discuss your notes with any other juror during your deliberations.  Any notes you have taken are to assist you and you alone.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.

Finally, your notes are not to substitute for your recollection of the evidence in this case. If you have any doubt as to any testimony, you may request that the official trial transcript that has been made of these proceedings be read or otherwise provided to you.

## CONCLUDING REMARKS

Your function now is to weigh the evidence in this case and to determine the guilt or non-guilt of each of the defendants with respect to each of the counts in the Indictment in which they are charged.  You are to consider each defendant's guilt or non-guilt as to each count separately.

You are about to begin your deliberations. If you want to see any of the physical evidence not sent into the jury room with you, or would like any of the testimony given during the trial read back to you, that can be arranged.  Please appreciate that it is not always easy to locate any testimony that you might want, so be as specific as you possibly can in requesting exhibits or portions of testimony you may want.  Any communication with the Court at all—whether requesting evidence or testimony or otherwise—should be made to me in writing, signed by your foreperson, and given to the Marshal.  I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom so I can speak with all of you in person, with the lawyers and the defendant present.  In no event should you tell me or anyone else—in a note or orally—how the jury stands numerically in its voting on the issues of the defendants' guilt until after a unanimous verdict is reached.

Your first task as a jury will be to choose your foreperson, if you have not already done so.  The foreperson has no greater voice or authority than any other juror but is the person who will communicate with the Court when questions arise.

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact.  It is for you, and you alone, to decide whether the Government has proved beyond a reasonable doubt the essential elements of the crimes with which the defendant has been charged.  If the Government has failed, your verdict must be not guilty; if it has succeeded, your verdict must be guilty.  Again, you must

consider each count individually.  I know you will try the issues that have been presented to you according to the oath that you have taken as jurors.  In that oath you promised that you would well and truly try the issues joined in this case and a true verdict render.  Your function is to weigh the evidence in the case and determine whether or not a defendant is guilty solely upon the basis of such evidence.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room and no one juror should control or monopolize the deliberations.  If, after listening to your fellow jurors and if, after stating your own view, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view.  On the other hand, do not surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or because you are outnumbered.  Your final vote must reflect your conscientious belief as to how the issues should be decided.

Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed that you are not to reveal the position of the jurors, that is, the split of the vote, to anyone, including the Court, at any time during your deliberations.  Finally, I say this not because I think it is necessary, but because it is the custom in this courthouse to say this:  You should treat each other with courtesy and respect during your deliberations.

All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All litigants stand equal before you.  Your duty is to decide the issues before you fairly and impartially, and to decide whether the Government has proved the charges against the defendants beyond a reasonable doubt or not.

Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided solely by the evidence or the lack of evidence presented during the trial and the law as I gave it to you, without regard to the consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on the basis of the evidence or the lack of evidence.  If you let sympathy interfere with your clear thinking, there is a risk that you will not arrive at a correct verdict which is based on the evidence of lack of evidence in the case.  All parties are entitled to a fair trial.

Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to spend a few moments with counsel and the reporter at the side bar.  I will ask you to remain patiently in the jury box, without speaking to each other, and we will return in just a moment to submit the case to you.