UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

    -v-

Trevon Gross,

                Defendant.

15-cr-769 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    On April 1, 2020, Defendant Trevon Gross filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a)(i). *See* Dkt. No. 753. The Government opposed Mr. Gross's motion on April 3, 2020 on the ground that the Court lacks statutory authority to grant Mr. Gross the relief that he seeks. *See* Dkt. No. 757. For the reasons that follow, the Court DEFERS ruling on Mr. Gross's motion at this time.

## I. COVID-19 POSES AN UNPRECEDENT RISK TO MR. GROSS AND OTHERS LIKE HIM

    Mr. Gross is a 50-year-old man who is severely overweight and suffers from high blood pressure and sleep apnea. *See* Dkt. No. 753-1 at 3. He takes several medications to manage these conditions, including Losartan Potassium, Spironolactone, Diltiazem, Metoprolol Tartrate, and Aspirin. *Id.* at 3–4. At least one—and perhaps all—of these conditions places him at a higher risk for severe illness if he contracts COVID-19. *See* Centers for Disease Control and Prevention, *Information for Healthcare Professionals: COVID-19 and Underlying Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html (noting that individuals with severe obesity, defined as a body mass index of 40 or higher, are considered to be "at high-risk for severe illness from COVID-19"); *see also, e.g.*, Lei Fang *et al.*, *Are Patients*

1

*with Hypertension and Diabetes Mellitus at Increased Risk for COVID-19 Infection?*, The Lancet (Mar. 11, 2020), at 1, https://doi.org/10.1016/S2213-2600(20)30116-8 (hypothesizing that hypertension treatment with angiotensin II receptor blockers, such as Losartan, "increases the risk of developing severe and fatal COVID-19").

The Court sentenced Mr. Gross—a first-time, non-violent offender—to 60 months in prison for the commission of various offenses related to an illegal and unlicensed Bitcoin exchange. *See* Dkt. No. 657. Mr. Gross remained at liberty throughout his criminal prosecution up until the time that he surrendered to the custody of the Bureau of Prisons following his sentencing, as the Court determined that he posed neither a flight risk nor a danger to the community. He is currently serving his sentence, of which roughly half remains, at USP Canaan. *See* Dkt. No. 753-1 at 2; Dkt. No. 757 at 3.

The combination of Mr. Gross's health conditions and his incarceration compounds the risk COVID-19 poses to him, placing him in "particularly grave danger," *see United States v. Nkanga Nkanga*, No. 18-cr-713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020); not only is he at a higher risk of serious illness if he contracts COVID-19 due to his underlying health conditions, but he is also at a higher risk of *contracting* COVID-19 due to his incarceration. Indeed, as numerous courts within and without this District have recognized, "[i]ndividuals in carceral settings are at a '*significantly higher*' risk of spreading infectious diseases." *Coronel v. Decker*, No. 20-cv-2472 (AJN), 2020 WL 1487274, at *3 (S.D.N.Y. Mar. 27, 2020) (emphasis added); *accord United States v. Davis,* 2020 WL 1529158, at *4 (D. Md. Mar. 30, 2020) ("The inability to practice social distancing in jails makes 'transmission of COVID-19 more likely.'"); *United States v. Harris*, 2020 WL 1482342, at *1 (D.D.C. Mar. 26, 2020) ("The risk of the spread of the virus in the jail is palpable . . . ."); *Basank v. Decker*, No.

20-cv-2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) ("The risk of contracting COVID-19 in tightly-confined spaces, especially jails, is now exceedingly obvious."); *United States v. Ramos*, 2020 WL 1478307, at *1 (D. Mass. Mar. 26, 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in [an] institutional setting as recommended by the CDC . . . .").[1]

In light of the unprecedented—and potentially life-threatening—risk COVID-19 poses to Mr. Gross, he has moved this Court to release him from USP Canaan to serve what remains of his sentence in home confinement. Immediately after filing the motion now before the Court, Mr. Gross's counsel sent a letter request seeking compassionate release to the Warden at USP Canaan, and the Warden confirmed receipt of that request on April 2, 2020. *See* Dkt. No. 757 at 4; Dkt. No. 757-1; Dkt. No. 757-2. Neither party has indicated that any action has been taken on

---

[1] So too have public health experts and officials warned, for at least the last decade, of the dangers of infectious disease outbreaks in institutional settings. *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047 (Oct. 2007), https://doi.org/10.1086/521910 (noting that in jails and prisons "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); Claudia Lauer & Colleen Long, *US Prisons, Jails on Alert for Spread of Coronavirus*, Associated Press (Mar. 7, 2020), https://apnews.com/af98b0a38aaabedbcb059092db356697 ("Health officials have been warning for more than a decade about the dangers of outbreaks in jails and prisons, which are ideal environments for virus outbreaks: Inmates share small cells with total strangers, use toilets just a few feet from their beds, and are herded into day rooms where they spend hours at a time together."); Letter, Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020), https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-19_letter_from_public_health_and_legal_experts.pdf ("Special attention must be paid to the needs of people in . . . confinement, who are particularly vulnerable. People . . . who are incarcerated . . . are at special risk of infection, given their living situations. These individuals may also be less able to participate in proactive measures to keep themselves safe, and infection control is challenging in these settings. Arrest and short-term incarceration can help amplify epidemics . . . .").

Mr. Gross's request since it was received by the Warden just a few days ago. However, the Government represents that USP Canaan has indicated that it "[has] 30 days via statute and regulation to respond [to such requests], but oftentimes responds before that is complete." Dkt. No. 756.

## II. UNDER CURRENT LAW, THE COURT IS SKEPTICAL THAT IT POSSESSES AUTHORITY TO GRANT MR. GROSS RELIEF AT THIS JUNCTURE

Having considered the parties' briefing, the Court defers ruling on Mr. Gross's motion, because it is skeptical that it possesses the authority to grant Mr. Gross relief at this juncture.

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-cr-743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a term of imprisonment if, after considering the factors set forth in section 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act, enacted in 2018, allows a court to do so "upon motion of the defendant" either "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" *or* after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*." *Id.* (emphasis added).

The text of the First Step Act thus reflects a balance struck between "competing congressional objectives." *United States v. Russo*, No. 16-cr-441 (LJL), Dkt. No. 54 at 4 (S.D.N.Y. Apr. 3, 2020). On the one hand, the statute includes an exhaustion requirement in recognition of the fact that "BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the

4

adequacy of a release plan." *Id.* On the other hand, the statute *itself* provides an exception to this exhaustion requirement, permitting a defendant to seek judicial review—even if he has not yet fully exhausted his administrative rights—where 30 days have elapsed from the warden's receipt of the defendant's request. This built-in exception to the statutory exhaustion requirement "unquestionably reflects congressional intent for the defendant to have the right to a meaningful and prompt *judicial* determination of whether he should be released." *Id.*

The parties agree that Mr. Gross has satisfied neither statutory prerequisite for judicial review, *see* Dkt. No. 753-1 at 2, 8; Dkt. No. 757 at 7, but he implores the Court to find the exhaustion requirement that § 3582(c)(1)(A) imposes waived rather than await the exhaustion of his administrative rights or the lapse of the statutorily-mandated 30-day period. The Court is aware that other courts have recently waived exhaustion under similar circumstances and proceeded to consider the merits of defendants' motions for compassionate release. *See, e.g.*, *United States v. Perez*, No. 17-cr-513 (AT), Dkt. No. 98 at 2 (S.D.N.Y. April 1, 2020) (granting defendant's motion for compassionate release under 18 U.S.C. 3582(c)(1)(A), and holding "that [the defendant's] exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic"). However, the Court is skeptical that the First Step Act admits of such exception to its statutory exhaustion requirement. Indeed, the Supreme Court cautions courts against "read[ing] futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001), because, in the case of *statutory* exhaustion requirements, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to," *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Under this precedent, the case for carving out an equitable exception here is weak. Not only does the First

5

Step Act explicitly circumscribe judicial review, requiring a defendant to first *fully* exhaust *all* administrative rights, but it also provides a built-in futility exception in the form of the 30-day rule.

Having expressed its skepticism regarding its authority to grant Mr. Gross the relief he seeks at this juncture, the Court will defer ruling on Mr. Gross's motion, including his exhaustion arguments, in order to afford the Bureau of Prisons the opportunity—that it requests and the First Step Act contemplates—to assess Mr. Gross's request in the first instance. *See* Dkt. No. 757 at 18. The Court is confident that BOP will act with the swiftness this situation demands, and sees "[n]othing in the agency's internal procedures for implementing the compassionate release statute that suggests that it cannot complete its review process, including any appeal, *extremely quickly*." *Russo*, Dkt. No. 54 at 5 n.1 (emphasis added). Accordingly, the Government is hereby ordered to submit a letter immediately following any determination BOP makes on Mr. Gross's request for compassionate release. The Court expects BOP to be able to finally resolve Mr. Gross's request by April 9, 2020—one week after the Warden at USP Canaan confirmed receipt of his request. If BOP has not made a final determination on Mr. Gross's request by April 9, 2020, the Court will consider Mr. Gross's motion—including his exhaustion arguments—at that time.

In so concluding, the Court notes that though it feels constrained to honor the balance Congress has struck in the First Step Act *at this time*, that balance was struck without the specter of the COVID-19 pandemic looming. Under normal circumstances, the built-in 30-day exception to the statutory exhaustion requirement functions as "an accelerant to judicial review," providing defendants with recourse to the courts after the lapse of an otherwise "exceptionally quick" 30-day period. *Russo*, Dkt. No. 54 at 5. However, we are not currently living under

normal circumstances. Indeed, over the course of 30 days in New York State, the number of diagnosed cases of COVID-19 has grown from only a handful to well over 100,000. *Compare* Andrew Cuomo (@NYGovCuomo), Twitter (Mar. 5, 2020, 12:41 PM), https://twitter.com/NYGovCuomo/status/1235621417577635840 (confirming that New York had 22 cases of COVID-19 statewide as of March 5, 2020) *with* New York State Department of Health, NYSDOH COVID-19 Tracker, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Map?%3Aembed=yes&%3Atoolbar=no (confirming that New York had 122,031 confirmed cases of COVID-19 statewide as of April 4, 2020). Under such circumstances, 30 days is anything but "exceptionally quick"—indeed, each day, perhaps each hour, that elapses "threatens incarcerated defendants with greater peril." *Russo*, Dkt. No. 54 at 5. Requiring defendants to await the lapse of the *full* 30 days from receipt of their requests by the wardens of their facilities may "pervert congressional intent" by transforming the 30-day rule into an obstacle—rather than an accellerant—to judicial review, *see Russo*, Dkt. No. 54 at 5, and result in irreparable harm to defendants, *see United States v. Nkanga Nkanga*, No. 18-cr-713 (JMF), Dkt. No. 104 at 2 (S.D.N.Y. Apr. 3, 2020).

Thus, while the Court awaits BOP's quick resolution of Mr. Gross's request, it joins the growing chorus of courts imploring the coordinate branches to take action in response to the threat COVID-19 poses to incarcerated people before it is too late. *See Nkanga Nkanga*, 2020 WL 1529535, at *1–2 (finding that the court's "powerless[ness] under the law as it currently stands" "underscores the need for a swift congressional and executive response"); *see also, e.g.*, *United States v. Villegas*, 2020 WL 1649520, at *3 (C.D. Cal. Apr. 3, 2020) ("[I]t is up to Congress, not the courts, to legislate in the current crisis a comprehensive solution for the federal prison system at large."). Requests such as this one—from non-violent, first-time

offenders with serious health conditions—underscore the limited tools available to judges to *promptly* address the public health crisis unfolding across the country—including, and perhaps most acutely, in its jails and prisons. *See Nkanga Nkanga*, WL 1529535, at *1 ("[T]here are many cases where temporary release of an inmate would be the rational and just course of action, but the law does not give a judge the authority to take it.").

## III. CONCLUSION

For the foregoing reasons, the Court DEFERS ruling on Mr. Gross's motion. The Government is HEREBY ORDERED to submit a letter immediately following any determination BOP makes on Mr. Gross's request for compassionate release. The Court expects BOP to be able to finally resolve Mr. Gross's request by April 9, 2020. If BOP has not made a final determination on Mr. Gross's request by April 9, 2020, the Court will consider Mr. Gross's motion—including his exhaustion arguments—at that time. In the interest of expedition, by April 10, 2020 at 12:00 p.m., Mr. Gross shall submit language for a proposed modification of his sentence.

Mr. Gross is further ORDERED to submit a reply in further support of his motion by April 8, 2020. In his reply, Mr. Gross shall address whether the Court's power to "reduce" a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) includes the power to craft a new sentence that would, in effect, allow a defendant to be released from custody (subject to any appropriate conditions) until the threat posed by COVID-19 has subsided and then remanded to serve additional imprisonment of a length not to exceed the amount of time currently remaining on his sentence. The Government may respond, addressing the same question, by April 10, 2020 at 12 p.m.

SO ORDERED.

Dated: April  6 , 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge