USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/14/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

    -v-

Trevon Gross,

                Defendant.

15-cr-769 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

    On April 1, 2020, Defendant Trevon Gross filed an emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a)(i). *See* Dkt. No. 753. In its April 6, 2020 Opinion and Order, Dkt. No. 758, the Court expressed skepticism that it then possessed the authority to grant Mr. Gross the relief he seeks, defered ruling on his motion at that time, and ordered the Government to submit a letter immediately following the Bureau of Prisons' final determination on Mr. Gross's request. The Court also articulated its expectation that BOP would act with the swiftness the current situation demands and finally resolve Mr. Gross's request by April 9, 2020. Because BOP has not yet resolved Mr. Gross's request and time is of the utmost essence, the Court now decides his motion.

**I.    THE COURT LACKS AUTHORITY TO GRANT MR. GROSS'S MOTION AT THIS JUNCTURE**

    As the Court noted in its April 6 Opinion and Order, "[a] court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *See* Dkt. No. 758 at 4 (quoting *United States v. Gotti*, No. 02-cr-743 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020)). 18 U.S.C. § 3582(c)(1)(A), the compassionate release statute at issue here, provides statutory authority for a court to reduce a term of imprisonment if, after considering the factors

1

set forth in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Where, as here, a motion for compassionate release is made by a defendant—as opposed to BOP—the Court may only reduce a defendant's sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" *or* after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The parties agree that Mr. Gross has satisfied neither statutory prerequisite for judicial modification of his sentence. *See* Dkt. No. 753-1 at 2, 8; Dkt. No. 757 at 7. Indeed, he has not yet fully exhausted all administrative rights to appeal, and his request, made through counsel, was received by BOP on April 2, 2020, less than 30 days ago.[1] Accordingly, the Court now lacks authority to grant Mr. Gross the relief that he seeks unless it may waive the express statutory exhaustion requirement § 3582(c)(1)(A) imposes. The tentative conclusion this Court reached in its April 6 Opinion and Order, Dkt. No. 758, is now what this Court holds: § 3582(c)(1)(A)'s exhaustion requirement cannot be waived by this Court. *See also, e.g.*, *United States v. Roberts*, No. 18-cr-528 (JMF), 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020) (reaching the same conclusion). To be sure, courts do have power to carve out exceptions to judicially-crafted exhaustion requirements. But the exhaustion requirement at issue here is not a

---

[1] Though Mr. Gross's counsel represents that BOP "has taken the position that it is not even aware that Mr. Gross has submitted a claim," *see* Dkt. No. 760 at 2, both the Government and Mr. Gross have submitted USP Canaan's April 2, 2020 confirmation of receipt of Mr. Gross's counsel's request. *See* Dkt. No. 757-2; Dkt. No. 760-3. Accordingly, the Court deems April 2, 2020 the date of "the receipt" of Mr. Gross's request for purposes of § 3582(c)(1)(A). *See* 28 C.F.R. § 571.61(b) ("The Bureau of Prisons processes a request made by another person on behalf of an inmate in the same manner as an inmate's request.").

2

judicial doctrine—it comes from § 3582(c)(1)(A)'s plain text. And "[w]here Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992); *see also Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (noting that, although "judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions . . .[,] mandatory exhaustion statutes like the [Prison Litigation Reform Act] establish mandatory exhaustion regimes, foreclosing judicial discretion"). The Supreme Court has explained that courts should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *see also Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) ("Faced with unambiguous statutory language requiring exhaustion of administrative remedies, we are not free to rewrite the statutory text." (internal quotation marks omitted)).

Moreover, as this Court has noted, the case for carving out equitable exceptions to this requirement is especially weak here because "the statute *itself* provides an exception to this exhaustion requirement, permitting a defendant to seek judicial review—even if he has not yet fully exhausted his administrative rights—where 30 days have elapsed from the warden's receipt of the defendant's request." Dkt. No. 758 at 5. This "built-in exception to the statutory exhaustion requirement," *id.*, further suggests that courts have no role in creating additional exceptions to the requirement. In short, § 3582(c)(1)(A)'s exhaustion requirement is written in mandatory terms, and no matter how compelling the circumstances, the Court lacks power to excuse Mr. Gross's compliance. The Court therefore cannot, at this time, grant Mr. Gross the relief he seeks.

In so concluding, the Court notes a growing split in this Circuit regarding whether § 3582(c)(1)(A)'s statutory exhaustion requirement is waivable. Just today, at least one other court

in this District resolved this issue in the affirmative, while this Court now resolves it in the negative. *See United States v. Haney*, No. 19-cr-541 (JSR), Dkt. No. 27 at 3 n.1 & 11–12 (Apr. 13, 2020) (collecting cases from this Circuit reaching opposite conclusions on this issue before ultimately finding the exhaustion requirement waivable). Courts that have concluded that the exhaustion requirement is waivable have consistently cited the COVID-19 public health crisis and the urgent need to act quickly in their reasoning. *See, e.g.*, *United States v. Perez*, No. 17-cr-513 (AT), 2020 WL 1546422, at *3 (S.D.N.Y. Apr. 1, 2020); *United States v. Colvin*, No. 19-cr-179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); *Haney*, Dkt. No. 27 at 10. And even courts—such as this one—that have concluded that the statutory exhaustion requirement is *not* waivable have nonetheless attempted to exercise the limited powers available to them to expedite consideration of the merits of defendants' motions in the face of the rapidly-spreading COVID-19 pandemic. *See, e.g.*, *United States v. Knox,* No. 15-cr-445 (PAE), Dkt. No. 1078 at 1 (S.D.N.Y Apr. 2, 2020) (ordering the Government to file a sworn declaration from BOP setting forth a firm date by which it would resolve defendant's request and noting its expectation that BOP would finally resolve defendant's request within 8 days); Dkt. No. 758 at 8 (ordering the Government to submit a letter as soon as BOP had finally resolved Mr. Gross's request and noting its expectation that it would do so within 4 days). Courts are thus in *agreement* regarding the need to act with dispatch in deciding defendants' compassionate release motions, even if they are in disagreement as to whether or how § 3582(c)(1)(A) might allow them to do so.

The patchwork approaches of courts in this Circuit underscore a great need for clarity—and a more comprehensive solution—from Congress. If, as this Court and others believe, Congress intended § 3582(c)(1)(A) to act as an *accelerant* to judicial review, it should take note of the fact that today this Court is compelled by the express language of that statute to treat it as

4

just the *opposite*. The Court, regrettably finding its hands tied by statute, thus once again implores Congress to take further action in response to the threat COVID-19 poses to incarcerated people before it is too late. For many of these defendants, awaiting administrative exhaustion or the lapse of the statutorily-mandated 30-day period before courts may consider their often meritorious compassionate release motions may mean the difference between life and death.

## II. THE COURT WILL GRANT MR. GROSS'S MOTION BY MAY 2, 2020

In the interest of expedition, the Court now states its view on the merits of Mr. Gross's motion, which it will grant by May 2, 2020, if not sooner, for the reasons that follow.

As discussed above, the compassionate release statute permits a court to reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). "Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence." *United States v. Butler,* No. 19-cr-834 (PAE), 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020) (citing *United States v. Ebbers*, No. 02-cr-1144 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020)). The applicable policy statement, U.S.S.G. § 1B1.13, sets forth four circumstances that present "extraordinary and compelling reasons" warranting a sentence reduction. Of particular relevance here, one such circumstance exists where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The policy statement also requires that the

defendant not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

It is now nearly beyond cavil that the combination of the COVID-19 pandemic and Mr. Gross's health conditions constitutes an extraordinary and compelling reason warranting a reduction of his sentence. The COVID-19 pandemic is "extraordinary and unprecedented in modern times in this nation." *Butler*, 2020 WL 1689778, at *2. As discussed in the Court's April 6 Opinion and Order, Mr. Gross suffers from several health conditions, at least one of which places him at a higher risk for severe illness if he contracts COVID-19. *See* Dkt. No. 758 at 1. Moreover, not only is he at a higher risk of serious illness if he contracts COVID-19 due to his underlying health conditions, but he is also at a higher risk of *contracting* COVID-19 due to his incarceration. "And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself." *Butler*, 2020 WL 1689778, at *2. For these reasons, numerous courts have recently concluded that "extraordinary and compelling reasons" exist for purposes of the policy statement where inmates suffer from medical conditions that place them at a higher risk of serious illness in the event they contract COVID-19. *See, e.g.*, *United States v. Zukerman*, No. 16-cr-194 (AT), 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (collecting cases). Accordingly, this factor favors Mr. Gross's early release.[2]

Furthermore, Mr. Gross does not pose any danger to the safety of others or the community. He is a 50-year-old, first-time offender who was convicted of non-violent offenses. There is not even so much as a suggestion in his record that he poses a danger to the community, and the Court has, on a prior occasion, concluded by *clear and convincing evidence* that he does

---

[2] The requirement that any sentence reduction also be "consistent with applicable policy statements" is met where, as here, "'extraordinary and compelling reasons' exist as defined" by the applicable policy statement. *See Ebbers*, 2020 WL 91399, at *6.

6

not. *See* Dkt. No. 678 at 2. The time that has passed since has only strengthened that conclusion. Mr. Gross has been a model inmate at USP Canaan, having thus far earned 108 days of good time credit to show for his exemplary behavior. *See* Dkt. No. 760 at 7; Dkt. No. 760-9 at 3.

Finally, application of the § 3553(a) factors also favors a reduction of Mr. Gross's sentence. In light of the COVID-19 pandemic, the "history and characteristics of the defendant" and the "need . . . to provide the defendant with needed . . . medical care," 18 U.S.C. § 3553(a), now weigh heavily in favor of Mr. Gross's release, given the health risk that continued incarceration at USP Canaan—which, as of April 9, 2020, had at least one inmate and one staff member test positive for the virus, *see* Dkt. No. 760 at 6—poses to him. Furthermore, Mr. Gross is a non-violent, first-time offender who has already served roughly half of his 60-month sentence. And though his original release date—currently projected as May 16, 2022, *see* Dkt. No. 760-9 at 2—"may be far off, the threat of COVID-19 is at his doorstep." *Zukerman*, 2020 WL 1659880, at *4 (granting motion for compassionate release brought by defendant with underlying health conditions who was convicted of non-violent offenses and was scheduled to be released in July 2022). Thus, while the Court's original 60-month sentence reflected the seriousness of the offense at the time, contracting COVID-19 could transform that sentence into a death sentence for Mr. Gross.

Furthermore, though he is not projected to be released until May 16, 2022, *see* Dkt. No. 760-9 at 2, even prior to passage of the CARES Act—pursuant to which the Attorney General has exercised his authority to "expand the cohort of inmates who can be considered for home release" by BOP to include "all at-risk inmates," *see* William P. Barr, Attorney General, Memorandum for Director of Bureau of Prisons: Increasing Use of Home Confinement at

Institutions Most Affected by COVID-19, at 1–2 (Apr. 3, 2020)—Mr. Gross would have been eligible for release to home detention on November 16, 2021, *see* Dkt. No. 760-9 at 2— approximately 19 months from now. Although this is not an insignificant amount of time remaining on his sentence, given these circumstances, the grave risk the COVID-19 pandemic poses to Mr. Gross outweighs any value to society by incarcerating him at USP Canaan for 19 additional months while the COVID-19 pandemic continues to wreak havoc across this country and especially in its jails and prisons. This conclusion is bolstered by recent BOP guidance permitting inmates, like Mr. Gross, in low or minimum-security facilities *who have not yet served 50% of their sentences* to be considered for eligibility for transfer to home confinement in light of the COVID-19 pandemic. *See Livas v. Myers*, No. 20-cv-422 (TAD), Dkt. No. 8-1 ¶¶ 19–21 (W.D. La. Apr. 10, 2020).

In light of the foregoing, if BOP has not yet finally resolved Mr. Gross's request by May 2, 2020, the Court will grant his motion for compassionate release at that time, as 30 days will have then passed from the receipt of Mr. Gross's request by the Warden at USP Canaan.

**III. THE COURT MAY GRANT MR. GROSS'S MOTION SOONER IF THE GOVERNMENT WAIVES THE STATUTORY EXHAUSTION REQUIREMENT**

Finally, the Court notes that though it cannot grant Mr. Gross's motion now, *see supra* Section I, it may do so if the Government relents on its invocation of the statutory exhaustion requirement as a barrier to this Court taking immediate action on Mr. Gross's compassionate release motion. This is so because the Court concludes that § 3582(c)(1)(A)'s exhaustion requirement is mandatory but *not* jurisdictional. Statutory requirements like these are jurisdictional only if they are explicitly couched in jurisdictional terms—the Supreme Court has described this as a "bright line" rule. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) ("If the Legislature clearly states that a threshold limitation on a statute's scope shall count as

jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." (citation omitted)). Because Congress did not define § 3582(c)(1)(A)'s exhaustion requirement as jurisdictional, the requirement is instead a mandatory "claim-processing rule." *See Henderson v. Shinseki*, 562 U.S. 428, 435 (2011); *see also Fort Bend County v. Davis*, 139 S. Ct. 1843, 1849 (2019). Accordingly, the Government can waive compliance with this requirement. *See Haney*, Dkt. No. 27 at 7; *see also United States v. Gentille*, No. 19-cr-590 (KPF), Dkt. No. 31 at 1 (S.D.N.Y. Apr. 6, 2020) (articulating the Government's position that the statutory exhaustion rqeuirement is not jurisdictional but is "mandatory unless waived by the Government").

In light of the foregoing conclusion, all that stands between Mr. Gross and the incredibly time-sensitive relief that he seeks at this juncture is the Government's insistence that he fully exhaust all administrative rights before resorting to this Court. The Court thus urges the Government to very seriously consider whether the "seemingly elusive benefits" of maintaining its position that Mr. Gross must fully exhaust his administrative rights before seeking relief from this Court "outweigh the potentially catastrophic human consequences" of deferring Mr. Gross's release by three weeks. *See United States v. Knox*, No. 15-cr-445 (PAE), Dkt. No. 1084 at 4 (S.D.N.Y. Apr. 8, 2020).

## IV. CONCLUSION

The Court concludes that it does not have authority to grant Mr. Gross's motion for compassionate release at this juncture, but it will do so by May 2, 2020, if not sooner. The Government shall inform the Court and Mr. Gross by 6 p.m. on April 14, 2020 whether it continues to invoke the statutory exhaustion requirement in this case.

9

SO ORDERED.

Dated: April 13, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge